Hon. Ronald B. Leighton

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

MARK HOFFMAN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

HEARING HELP EXPRESS, INC.,

    Defendant.

CASE NO. 3:19-cv-05960-RBL

**DECLARATION OF JIM HOULIHAN IN SUPPORT OF DEFENDANT HEARING HELP EXPRESS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

NOTED FOR CONSIDERATION: May 22, 2020

ORAL ARGUMENT REQUESTED

I, Jim Houlihan, declare as follows:

1. I am over 18 years of age. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2. I am the President of Hearing Help Express, Inc. ("Hearing Help") and Vice President of Direct-to-Consumer at IntriCon, Inc. I have held these positions since September of 2016. Hearing Help sells hearing aids direct-to-consumer and was established in 1979. Hearing Help currently has approximately 12 employees. The number is approximate due to layoffs as a result of the current COVID-19 pandemic.

3. Part of my job responsibilities include overseeing various departments in the company, including but not limited to, sales and marketing. One of the ways Hearing Help receives contact information for potential hearing aid customers is by working with lead

DECLARATION OF JIM HOULIHAN IN SUPPORT
OF OPPOSITION TO MOTION TO COMPEL - 1
No. 3:19-cv-05960-RBL

VAN KAMPEN & CROWE PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/123258108v.3

generation companies. Once a lead is sold to Hearing Help, Hearing Help places its own outbound calls. Hearing Help has various sources of obtaining customer leads – some through direct efforts of the company and some through hiring lead generation vendors. Over the past five years, Hearing Help has worked with multiple third parties to generate leads on its behalf using various lead generation activities.

4. With respect to this litigation, Hearing Help worked with a company called Triangular Media Corp. ("Triangular") to generate customer leads for Hearing Help. Triangular was not hired to—and I believe it did not—place any outbound calls on Hearing Help's behalf. After Triangular sold a lead to Hearing Help, Hearing Help placed its own outbound telemarketing calls. Hearing Help does not hire third parties to place calls on its behalf to sell its products. Hearing Help began speaking with Triangular in May of 2018. On June 13, 2018, Hearing Help signed Triangular's "Lead Buyer Insertion Order/Contract" ("Insertion Order"). A true and correct copy of the Insertion Order that was signed by Hearing Help is attached hereto as **Exhibit 1**. As to the generation of leads, the Insertion Order provides as follows:

> IVR generated leads for Hearing Aids originating from TV commercial/Direct Mail. Prospects responding will place an inbound call to a toll-free number, through which they will respond to an IVR survey including the above-referenced vertical.

The other lead generation companies Hearing Help has worked with over the past five years were under separate contracts and in different ways that are completely unrelated to Triangular or Plaintiff.

5. Consistent with the Insertion Order, Triangular advised to Hearing Help that it would generate leads for Hearing Help only through direct mail and/or from a TV commercial. In this regard, Triangular was to send direct mail to individuals advertising a product/service unrelated to Hearing Help, which would prompt the person to call a phone number if they wanted more information. The phone call would lead the person to Triangular's interactive voice response ("IVR"). For the commercial, an individual would see the commercial on TV advertising a product/service unrelated to Hearing Help. The commercial would have a phone

DECLARATION OF JIM HOULIHAN IN SUPPORT
OF OPPOSITION TO MOTION TO COMPEL - 2
No. 3:19-cv-05960-RBL

VAN KAMPEN & CROWE PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/123258108v.3

number for people to call if they wanted more information, which would lead them to Triangular's IVR.

6. Triangular provided Hearing Help with the IVR and the questions it asks, and I have listened to it. I understand that this IVR was the one Triangular used during the entire time Triangular sold customer leads to Hearing Help. Triangular's IVR asks for people to identify the following information: first name; last name; zip code; mailing address; date of birth; and e-mail address. The IVR then asks the person if they would like to receive information about certain products from specific companies and asks some other questions based on certain responses. One of these prompts is about Hearing Help. Specifically, the IVR asks: "If you suffer from hearing loss, Hearing Help Express has a solution. I would like to offer you a risk free 45-day trial to get your hearing better today. If you suffer from hearing loss, have good credit, and would like a hearing specialist to call you back to tell you about their program, please say 'yes.' Otherwise, say 'no.'"

7. At the very end of the IVR, it states as follows: "Thank you for completing our survey. By participating in our survey and requesting your free telephone consultation, you agree to be called by providers of the services you requested via an autodialed call or prerecorded message, regardless of whether your phone number is mobile or your status on any state or federal do not call list. Your consent is not a condition of making any purchase. For the services you've requested additional information, a specialist will be calling you back shortly. Please say 'yes' to confirm your request and to receive these services."

8. I have listened to the recording of the IVR involving Plaintiff Mark Hoffman. Mr. Hoffman responded "yes" when asked if he wanted a hearing specialist to call him. At the end of the IVR, Mr. Hoffman responded "no". Hearing Help understands that there was a glitch in Triangular's IVR that registered the "no" at the end as a "yes".

9. Triangular advised that only individuals who responded "yes" to the question about Hearing Help and "yes" to the very end of the IVR would be sold as a lead to Hearing Help. Based on this representation, Hearing Help believed that all leads sold to it by Triangular had provided express consent under the Telephone Consumer Privacy Act ("TCPA") to be contacted

DECLARATION OF JIM HOULIHAN IN SUPPORT
OF OPPOSITION TO MOTION TO COMPEL - 3
No. 3:19-cv-05960-RBL

VAN KAMPEN & CROWE PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/123258108v.3

by Hearing Help. Hearing Help had no reason to believe that any leads Triangular sold had not expressly consented to be called by Hearing Help, regardless of the call method Hearing Help used. Hearing Help maintains a do not call list for any customer who asked to stop being called by Hearing Help.

10. Hearing Help no longer works with Triangular and the date the last Triangular lead was sold to Hearing Help was October 20, 2019.

11. After Mr. Hoffman filed his lawsuit, Hearing Help became aware that Triangular used the services of another company called Skyscrapers (Pvt.) Limited ("Skyscrapers") to assist with the generation of customer leads for Hearing Help and for Triangular's other clients. With respect to Mr. Hoffman, Hearing Help understands that after Mr. Hoffman provided his contact information on a website operated by Skyscrapers, that Skyscrapers called him. On one of these calls, Mr. Hoffman's call was transferred to Triangular's IVR.

12. Triangular never informed Hearing Help of its relationship with Skyscrapers or that some of the leads sold to Hearing Help involved any other entity. Triangular did not have authority to use Skyscrapers to assist with the generation of leads for Hearing Help. Hearing Help did not know that Skyscrapers made calls to potential leads for Hearing Help until after this lawsuit was filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 18, 2020, at DeKalb, Illinois.

By: *James R. Houlihan*
Jim Houlihan

DECLARATION OF JIM HOULIHAN IN SUPPORT
OF OPPOSITION TO MOTION TO COMPEL - 4
No. 3:19-cv-05960-RBL

VAN KAMPEN & CROWE PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## Declaration of Service

I certify that on this day, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| TERRELL MARSHALL LAW GROUP<br>Beth E. Terrell<br>Jennifer Rust Murray<br>Adrienne D. McEntee<br>Benjamin M. Drachler<br>936 North 34th Street, Suite 300<br>Seattle, Washington 98103-8869<br>Phone: (206) 816-6603<br>BTerrell@terrellmarshall.com<br>JMurray@terrellmarshall.com<br>AMcentee@terrellmarshall.com<br>bdrachler@terrellmarshall.com<br><br>Attorneys for Plaintiff | PARONICH LAW, P.C.<br>Anthony I. Paronich<br>350 Lincoln Street, Suite 2400<br>Hingham, Massachusetts 22043<br>Phone: (617) 485-0018<br>Fax: (503) 318-8100<br>Anthony@paronichlaw.com<br><br>Attorney for Plaintiff |

Signed at Seattle, Washington this 18th day of May 2020.

　　　　　　　　/s/ David E. Crowe
　　　　　　　　David E. Crowe

---

DECLARATION OF JIM HOULIHAN IN
SUPPORT OF DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL - 5
No. 3:19-cv-05960-RBL
113461.00602/123258105v.6

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353