UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CASE NO: 3:19-cv-05960-RBL
Honorable Ronald B. Leighton

MARK HOFFMAN, on behalf of himself
And all others similarly situated,

   Plaintiff,

v.

HEARING HELP EXPRESS, INC.,
TRIANGULAR MEDIA CORP., and
LEWIS LURIE,

   Defendants.

**DEFENDANT, LEWIS LURIE'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Defendant, LEWIS LURIE, who is PRO SE and files this Motion to Dismiss the First Amended Complaint filed by Plaintiff, and as grounds therefore states the following:

**Relevant Facts**

Plaintiff's Complaints

1. On October 9, 2019, Plaintiff filed a Class Action Complaint against Hearing Help Express, Inc. for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.

1　("TCPA") [D.E. 1]. In his original Complaint, Plaintiff alleged that on August 27, 2019, August 29, 2019, and September 4, 2019 he received unsolicited telephone calls promoting hearing aid services [D.E. 1 at ¶¶ 11-15]. In his original Complaint, Plaintiff alleged that "Plaintiff was not interested and had not requested information regarding those products." [D.E. 1 at ¶ 16].

2. During discovery it was revealed that Plaintiff had, in fact, expressed interest and requested information regarding those products weeks prior. Specifically, on June 13, 2019, Plaintiff provided information (including his name, postal address, email address, date of birth and other information) during a pre-recorded Interactive Voice Response (IVR) survey that he now admits to participating in by answering these questions [Plaintiff's First Amended Complaint, D.E. 45 at ¶ 21]. A recording of the survey, including Plaintiff's responses, was furnished to Plaintiff's counsel prior to the filing of his First Amended Complaint.

3. One of the questions in the pre-recorded IVR survey was, *"If you suffer from hearing loss, Hearing Help Express has a solution and would like to offer you a risk free 45-day trial to get your hearing better today. If you suffer from hearing loss, have good credit, and would like a hearing specialist to call you back, please say "yes" otherwise say "no"."* Plaintiff replied, "yes".

4. Plaintiff's original Complaint made no reference whatsoever to the June 13th IVR survey or the fact that Plaintiff had, in fact, expressed interest in and requested information regarding a risk free 45-day trial from Hearing Help Express several weeks prior to the calls complained of in the original Complaint.

5. The expression of interest and request for information (opt-in) was obtained through an IVR path technology operated by Triangular Media, who furnished Plaintiff's information to Hearing Help.

6. Rather than concede the grievous factual omission in his original Complaint, Plaintiff now files his First Amended Complaint adding as defendants Triangular Media and one of its employees, Lewis Lurie, and referencing a series of six additional telephone calls not made by Triangular Media, Mr. Lurie nor Hearing Help, but allegedly made by a third-party.

7. Plaintiff, in his First Amended Complaint shifts gears from claiming the calls from Hearing Help were unsolicited, to challenging the validity of his opt-in, claiming to have feigned interest because "[he] wanted to know who had been calling him so he answered the questions." [Plaintiff's First Amended Complaint, D.E. 45 at ¶ 21].

### Triangular Media's Business Model

8. At all times Triangular had been in business, it operated only an *inbound* IVR path technology through which it generated sales leads from prospects interested in obtaining information on various products or services offered by Triangular's clients, including Hearing Help and other businesses [Declaration of Dana Lurie, D.E 40-1 ¶ 2].

9. Calls would come into the IVR technology from various traffic sources, including direct response television, per-inquiry television, click-to-call, direct response mail and up-sells or down-sells from other third-party campaigns. The consumer would be asked (via a series of pre-recorded voice prompts) questions related to different products or services they could opt-in to receive more information on. The indicator in the system that a consumer wanted more

information is based on an individual verbally answering yes or no to specific questions in the path. [D.E 40-1 ¶¶ 3-4].

10. "Neither Triangular nor any of its officers, directors, or employees ever made outbound telephone calls nor did anyone in Triangular engage in any outbound telemarketing. Neither Triangular nor any of its officers, directors, or employees placed a telephone call to the Plaintiff, Mr. Hoffman, nor to any consumer, lead or prospective lead or inquiry. Neither Triangular nor any of its officers, directors, or employees directed anyone else to place a telephone call to Mr. Hoffman or any of his telephone numbers nor to anyone else. Such activity was outside the business model, practice and technology of Triangular. Triangular simply never made any outbound calls to any consumer, lead or prospective lead or inquiry at any time it was in business." [D.E 40-1 ¶¶ 5]

11. The first and only record Triangular has of Plaintiff is from the June 13, 2019 inbound call during which Plaintiff proceeded through the IVR Path. [Declaration of Gorgi Gorgiev, D.E 40-2 ¶ 13] and during which Plaintiff admits he answered questions [D.E. 45 ¶ 21]. That record was delivered to Hearing Help the same day.

12. These facts were available to Plaintiff and taken from Declarations already provided to Plaintiff's counsel and which Plaintiff's counsel supplied to counsel for Hearing Help [Declaration of Nicole Metral, Esq., D.E. 40 ¶ 5].

**Summary of Plaintiff's Arguments**

13. Plaintiff, Mark Hoffman, ("Plaintiff") alleges in his First Amended Complaint that corporate defendants Hearing Help Express, Inc. ("Hearing Help"), Triangular Media, Corp.

1  ("Triangular"), and/or another third-party initiated calls (or caused calls to be initiated) to
2  Plaintiff that were violative of the TCPA.

3  14. Plaintiff contends that Mr. Lurie, by virtue of being an alleged "owner and operator" of one of
4  the corporate defendants, Triangular, is personally liable under the TCPA for the allegedly
5  violative calls. (ECF No. 45 ¶ 14).

**Summary of Mr. Lurie's Arguments**

8  15. Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss
9  a complaint for "lack of personal jurisdiction." In opposing a defendant's Rule 12(b)(2) motion,
10  "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*,
11  539 F.3d 1011, 1015 (9th Cir. 2008).

12  16. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed
13  for failure to allege sufficient facts to state a claim upon which relief may be granted.

14  17. Mr. Lurie is an individual, domiciled in the State of Florida, who has lived in Florida
15  continuously for more than twenty years. Mr. Lurie has no contact with Washington. (See
16  EXHIBIT A, Affidavit of Lewis Lurie). A simple search of the Secretary of State records[1] for
17  each corporation will show that Mr. Lurie is not an owner or officer of either of the corporate
18  defendants. That notwithstanding, even if he were, the allegations contained in the First
19  Amended Complaint are woefully insufficient to pierce the corporate veil and hold Mr. Lurie
20  personally liable.

21  18. Personal jurisdiction over individual corporate officers may not be based on the court's
22  jurisdiction over the corporation itself. See *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th

---

[1] https://www.ilsos.gov/corporatellc/CorporateLlcController and http://search.sunbiz.org

1   Cir. 1989) ("Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person.") "For claims sounding in tort, a corporate officer can be subject to jurisdiction based on his own sufficient individual contacts with the forum." *Boon Global Ltd. v. U.S. District Court*, 923 F.3d 643, 652 (9th Cir. 2019).

19. In *Brown v. General Steel Domestic Sales*, LLC 2008 U.S. Dist. LEXIS 97832, 36-37 (C.D. Cal. 2008), the District Court stated that if a corporation is subject to jurisdiction in the forum state, "it does not necessarily confer jurisdiction over its individual officers. Instead, the court must examine the individual's contacts with the forum to determine if they are sufficient to warrant the exercise of jurisdiction over him in connection with forum-related claims."

20. The Court of Appeals for the Ninth Circuit has recognized that "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the [corporate officer] was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." *Davis*, 885 F.2d at 523.

21. As set forth in this Motion, in Mr. Lurie's Affidavit, in the Declarations provided by Plaintiff's counsel to counsel for Hearing Help, [D.E. 40-1, 40-2] and the responsive pleadings of Defendant Hearing Help, neither Triangular nor Mr. Lurie made the offending phone calls to Plaintiff nor did they cause the offending phone calls to be made.

22. Plaintiff, in its First Amended Complaint only makes conclusory allegations against Mr. Lurie. Allegations which are controverted by Declarations in the Plaintiff's possession prior to the filing of his First Amended Complaint and absent of any facts which would substantiate their accusation that it was Mr. Lurie who placed or directed the calls. Accordingly, general or

1  specific jurisdiction over Mr. Lurie cannot be exercised and all claims against him must be
2  dismissed pursuant to FRCP Rule 12(b)(2).
3  23. Further, the First Amended Complaint fails to state any claim against Mr. Lurie, individually,
4  for which relief can be granted and should be dismissed pursuant to FRCP Rule 12(b)(6).

## Arguments

24. There are two bases for personal jurisdiction over a non-resident defendant: "(l) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and, (2) 'specific jurisdiction' which arises out of a defendant's contacts with the forum state giving rise to the subject litigation." *Birzer v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005 at 1008 (C.D. Cal. 2006). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction - that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Cantre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

### Hoffman's Complaint Lacks Allegations of General Jurisdiction Against Defendant Lurie

25. For general jurisdiction to exist, a defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

26. In this case, Plaintiff alleges that Lewis Lurie is the "owner and operator" of Triangular [D.E. 45 ¶ 13]. Plaintiff alleges that "Mr. Lurie personally participated in the actions complained of

|   |   |
|---|---|
| 1 | by (a) selecting some of the phone numbers that would be called; (b) choosing any |
| 2 | telemarketing call center that it might have used; and (c) personally authorizing the |
| 3 | telemarketing conduct of Triangular Media." [*Id*. ¶ 15]. |
| 4 | 27. Defendant Lurie submitted an Affidavit in support of his Motion to Dismiss. Mr. Lurie stated |
| 5 | that he is not an owner of Triangular and has no knowledge of the calls complained of. Mr. |
| 6 | Lurie stated that he performed his duties exclusively from Florida. Mr. Lurie stated that he has |
| 7 | never resided in Washington, does not maintain an office or own property in Washington, does |
| 8 | not have any bank account in Washington, does not have a P.O. Box in Washington, does not |
| 9 | pay taxes in Washington, does not have any telephone listing in Washington, does not have |
| 10 | any agents, servants, or employees in Washington. Mr. Lurie stated that he did not make the |
| 11 | allegedly violative telephone calls, and that he did not cause, authorize or have knowledge of |
| 12 | any of the allegedly violative telephone calls made, neither Mr. Lurie nor Triangular own or |
| 13 | operate an Automatic Telephone Dialing System ("ATDS"), neither Mr. Lurie nor Triangular |
| 14 | engage in telemarketing, neither Mr. Lurie nor Triangular placed or directed any calls to |
| 15 | Plaintiff, neither Mr. Lurie nor Triangular select any telephone numbers to be called, and until |
| 16 | June 13, 2019 when Plaintiff entered Triangular's IVR path and provided his information, |
| 17 | neither Mr. Lurie nor Triangular had Plaintiff's telephone number nor even knew of Plaintiff. |
| 18 | 28. Plaintiff's allegations regarding Mr. Lurie's contacts with Washington are conclusory. "The |
| 19 | plaintiff cannot 'simply rest on the bare allegations of its complaint.'" See *Mavrix Photo, Inc.* |
| 20 | *v. Brand Technologies, Inc., 647 F.3d 1218 at 1223 (9th Cir. 2011)*. Plaintiff fails to state facts |
| 21 | that support an inference that Mr. Lurie has "continuous and systematic" contacts with |
| 22 | Washington. *Daimler AG*, 571 U.S. at 127. |

29. Although Mr. Lurie had a role in Triangular, Plaintiff fails to state facts that support a reasonable inference that Triangular or Hearing Help are Mr. Lurie's alter ego or that Mr. Lurie is the 'guiding spirit' or 'central figure' behind any conduct of Triangular or Hearing Help or that Mr. Lurie would be subject to general jurisdiction if the Court imputed Triangular or Hearing Help's contacts with Washington to Mr. Lurie. Plaintiff fails to present evidence to meet the exacting standard necessary to establish general jurisdiction against Mr. Lurie.

**Hoffman's Complaint Lacks Allegations of**
**Specific Jurisdiction Against Defendant Lurie**

30. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem International, Inc., 874 F.3d 1064 and 1068 (9th Cir. 2017)* (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). "Two principles animate [this] 'defendant-focused' inquiry." *Id.* (quoting *Walden*, 571 U.S. at 284). "First, the relationship between the nonresident defendant, the forum, and the litigation 'must arise out of contacts that the defendant himself creates with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284). "Second, the minimum contacts analysis examines 'the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* (quoting *Walden,* 571 U.S. at 285). "It follows that 'a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction.'" *Id.* (quoting *Walden,* 571 U.S. at 286).

31. In order for a court to exercise specific jurisdiction over a nonresident defendant, "(1) the defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[] himself of the privileges of conducting activities in the forum"; (2) "the claim must be

one which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.*

32. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797 at 802 (9th Cir. 2004). "If the plaintiff meets that burden, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable.'" *Axiom Foods, Inc.*, 874 F.3d at 1068-69 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

33. Under the first prong of the specific jurisdiction analysis, the court inquires "whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme,* 433 F.3d 1199, 1206 (9th Cir. 2006). This test requires that "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Axiom Foods, Inc.*, 874 F.3d at 1069 (citations omitted).

34. In this case, Plaintiff alleges that "Mr. Lurie personally participated in the actions complained of by (a) selecting some of the phone numbers that would be called; (b) choosing any telemarketing call center that it might have used; and (c) personally authorizing the telemarketing conduct of Triangular Media." [D.E. 45 ¶ 15].

35. As stated above and in the affidavit and declarations referenced herein, Mr. Lurie did not make the allegedly violative telephone calls, did not cause, authorize or have knowledge of any of the allegedly violative telephone calls to be made, neither he nor Triangular own or operate an

1     ATDS, neither he nor Triangular engage in telemarketing, neither he nor Triangular placed or
2     directed any calls to Plaintiff, neither he nor Triangular select any telephone numbers to be
3     called, and until Plaintiff entered Triangular's IVR path and provided his information in
4     response to the pre-recorded prompts, neither he nor Triangular had Plaintiff's telephone
5     number nor knew of Plaintiff.

6 36. Triangular's IVR path is strictly *inbound*. It receives incoming calls. As such, it does not direct
7     calls *to* anyplace.

8 37. Plaintiff does not allege that Mr. Lurie has any personal contacts with Washington. Plaintiff
9     alleges that Mr. Lurie has contacts with Washington through his actions as an "owner and
10     operator" of Triangular. Plaintiff alleges that Mr. Lurie committed intentional acts by
11     conducting business in Washington on behalf of Triangular and Hearing Help and by ordering
12     or conducting the alleged telephone calls to Plaintiff. Plaintiff's allegations are conclusory. Mr.
13     Lurie controverted Plaintiff's allegation that he placed, ordered or had knowledge of the calls
14     to Plaintiff in Washington. The Court cannot conclude that Mr. Lurie committed any
15     intentional act that was expressly aimed at Washington. Plaintiff fails to meet his burden to
16     establish that Mr. Lurie "purposefully direct[s] his activities" towards Washington. *Axiom*
17     *Foods, Inc.*, 874 F.3d at 1068

18 38. Plaintiff also cannot meet the second requirement for specific jurisdiction, which requires that
19     the contacts are a "but for causation" giving rise to the suit. *Bancroft & Masters, Inc.*, supra,
20     223 F.3d at 1087 (citing *Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995)). The
21     "but for" test requires that there be some nexus between the cause of action and the defendant's
22     activities in the forum. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990). Since
23     Plaintiff has not alleged any contacts or activities that Mr. Lurie has within Washington that

1    could constitute "purposeful availment," there is no "but for" causation here. The allegations,

2    as pled, do not relate to any actions by Mr. Lurie, personally, in Washington.

3  39. Finally, Plaintiffs must show that the exercise of jurisdiction over Mr. Lurie would be

4    reasonable. For jurisdiction to be reasonable, it must comport with fair play and substantial

5    justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L.Ed2d 528

6    (1985). The reasonableness determination requires the consideration of several specific factors:

7    (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on

8    defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the

9    defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient

10    judicial resolution of the controversy, (6) the importance of the forum to the plaintiffs interest

11    in convenient and effective relief, and, (7) the existence of an alternative forum. *Ziegler, supra,*

12    64 F.3d at 474-75.

13  40. Here, none of these specific factors apply to Mr. Lurie. First, Mr. Lurie did not interject himself

14    in activity in Washington. Second, it would be extremely burdensome for Mr. Lurie to travel

15    to Washington to defend the case. Even if, *arguendo*, the burden on Mr. Lurie is equal to the

16    burden that litigating in Florida would impose on Plaintiff, this factor would still weigh against

17    personal jurisdiction over Mr. Lurie. See, *Ziegler v. Indian River County, 64 F.3d 470, 475*

18    *(9th Cir.1995)* (holding that where the burden imposed on defendants by litigating in the forum

19    would be equal to litigating elsewhere, this factor should weigh in favor of defendants). Indeed,

20    inconvenience to the plaintiff is generally given little weight. *Ziegler*, supra, 64 F.3d at 476;

21    *Core-Vent Cmp. v. Nobel Indus.*, 11 F.3d 1482, 1486 (9th Cir. 1993) ("A mere preference on

22    the part of the plaintiff for its home forum does not affect the balancing [of the reasonableness

23    factors]").

1  41. The remaining factors should resolve in Mr. Lurie's favor because Plaintiff's First Amended Complaint does not include allegations suggesting a potential conflict with Washington's or any other state's sovereignty or facts demonstrating the importance of a Washington forum to Plaintiff's interest in convenient and effective relief. As to the final factor, Plaintiff bears the burden of proving that an alternative forum is unavailable. *Core-Vent Corp., supra*, 11 F.3d at 1490. Plaintiff simply cannot meet this burden as this action could be litigated in another forum, including Florida.

42. Accordingly, the three-prong test for specific personal jurisdiction cannot be satisfied as to Mr. Lurie and the First Amended Complaint should be dismissed as to Mr. Lurie.

### Mr. Lurie's Role in Triangular is Not a Valid Basis Upon Which to Assert Personal Jurisdiction

43. Plaintiff makes only broad, general allegations against Mr. Lurie, which Mr. Lurie and the declarations submitted in this case have specifically refuted. Without more, the fiduciary shield doctrine applies to Mr. Lurie, which states that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to assert [specific] jurisdiction over the person." *Davis v. Metro. Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).

44. The doctrine is subject to two exceptions: "(1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in, the alleged activities." *Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065, 1072 (C.D. Cal. 2004).

45. Here, Plaintiff does not allege that the corporate defendants are the alter egos of Mr. Lurie. Moreover, the allegations related to Mr. Lurie (contained in just three paragraphs of the First Amended Complaint) are too vague and conclusory to suggest that he has the requisite degree

1     of participation or control in the activities giving rise to Plaintiff's cause of action, especially where those activities are not even performed by Triangular.

46. Plaintiff alleged there are nine (9) telephone calls at issue that are violative of the TCPA; allegedly 6 were made on or prior to June 13, 2019 - only one (1) of which connected to Triangular Media - and 3 after June 13, 2019, made by Hearing Help, in good faith, after Plaintiff feigned interest in receiving more information about a hearing aid while participating in Triangular's IVR path.  The one call that was connected to Triangular's IVR came from Skyscrapers Pvt. Ltd. [D.E 40-1 ¶ 9] (hereinafter "Skyscrapers"). Skyscrapers' website (https://www.skyscrapersnow.com/) states it has 400+ clients.

47. Cases within the Ninth Circuit that have found jurisdiction and/or personal liability on the part of corporate officers involved "instances where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity.'" *Davis*, 885 F.2d at 524.

48. In a similar case involving alleged violations of the TCPA, the Court found "[t]his allegation does not contain factual material that would permit the Court to disregard Nationwide's corporate form and assert jurisdiction over Donisi and Jaxtheimer as individuals." *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-1127-WQH-KSC, 2018 U.S. Dist. LEXIS 3237 * 14 (S.D. Cal. Jan. 5, 2018).

49. In its 2015 Ruling on the TCPA, the Federal Communications Commission identified some of the factors used to evaluate an entity's (or individual's) involvement in placing a call, those include:

- the extent to which the provider/host controls the messaging;
- the extent to which the provider/host controls the timing or sending of the message;
- the extent to which the provider/host controls the recipient list;

- the extent to which the provider/host "willfully enables fraudulent spoofing of telephone numbers;"
- the extent to which the provider/host assists customers in blocking Caller ID;
- whether the provider/host knowingly allows its customers to use the platform in a way that violates the TCPA;
- whether the service or platform is purely reactive in nature, sending messages as proscribed and arranged by the customer.

*2015 TCPA Ruling*, 30 FCC Rcd. at 7980-84.

50. In the instant case, Triangular Media, let alone Mr. Lurie, did not make any outbound calls to Plaintiff and do not even own an ATDS. Nor did they even know of Plaintiff or have his information prior to June 13, 2019. As such, they did not control the messaging, timing or sending of calls they cannot place. Since neither Triangular nor Mr. Lurie place outbound calls, they do not "willfully enable fraudulent spoofing of telephone numbers" or block CallerID.

51. Plaintiff's telephone number was not even in the Triangular database until June 13, 2019. Accordingly, neither Triangular nor Mr. Lurie could have had any control over the recipient list of calls made on May 21, 22, 23, 24 and June 4, 2019 to a phone number not in their possession nor control or direct the acts of anybody to call him.

**Plaintiff's First Amended Complaint is Fatally Flawed on its Face and, must be Dismissed Pursuant to FRCP 12(b)(6)**

52. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a) (2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see Fed. R. Civ. P. 12(b)(6).

53. When the court reviews a complaint under Rule 12(b)(6), all the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to

1   the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916 , 919 (9th Cir. 2008).
2   But, the court need not accept conclusory allegations, allegations contradicted by exhibits
3   attached to the complaint or matters properly subject to judicial notice, unwarranted deductions
4   of fact, or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n.*, 629 F.3d 992, 998
5   (9th Cir. 2010). Mere legal conclusions are not accepted as true and "[t]hreadbare recitals of
6   elements of a cause of action, supported by mere conclusory statements, do not suffice."
7   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

8   54. A complaint must recite enough factual allegations to raise the plaintiff's claimed right to relief
9   beyond the level of mere speculation. *Id.* at 678.

10  55. To determine the sufficiency of a complaint under the pleading regime established by the
11  Supreme Court, the court must engage in a three-step analysis: First, the court must take note
12  of the elements a plaintiff must plead to state a claim. Second, the court should identify
13  allegations that, because they are no more than conclusions, are not entitled to the assumption
14  of truth. Finally, where there are well-pleaded factual allegations, a court should assume their
15  veracity and then determine whether they plausibly give rise to an entitlement for relief. *Id.* at
16  679.

17  56. Paragraph 14 of Plaintiff's First Amended Complaint alleges that Mr. Lurie "may be personally
18  liable for the acts alleged in this complaint pursuant to 47 U.S.C. § 217 of the TCPA, which
19  reads, inter alia:

20  > [T]he act, omission, or failure of any officer, agent, or other person
21  > acting for or employed by any common carrier or user, acting within
22  > the scope of his employment, shall in every case be also deemed to

be the act, omission, or failure of such carrier or user as well as of that person."

57. 47 U.S.C. § 217, applies to persons, "acting for or employed by any *common carrier* or *user*" (emphasis added). In telecommunications, common carrier, is an entity that provides wired and wireless communication services to the general public for a fee. Triangular Media does not provide wired or wireless communications services to the general public for a fee, and is not a "common carrier". Mr. Lurie is not acting for or employed by any common carrier or a user of a common carrier and therefore would not fall under this section of the TCPA.

58. Plaintiff's complaint fails to describe how Mr. Lurie placed calls (or directed others to place calls) to telephone numbers he is alleged to have "selected" prior to the time they were even in his possession, how the callers were agents of Mr. Lurie or how he was the alter ego, 'guiding spirit' or 'central figure' behind either corporate defendant, a third party or the calls at question.

59. Assuming, for the sake of argument, that Skyscrapers did place the five calls to Plaintiff prior to the one call that connected to Triangular's IVR path, there is no indication that those calls were not made on behalf of one of their 399+ other clients.

60. Similarly, the three calls made in good faith by Hearing Help after June 13, 2019 would not have happened but for the Plaintiff himself feigning interest, providing personal details and requesting additional information on a hearing aid in Triangular's IVR path. Plaintiff fails to explain how Mr. Lurie had control over the Plaintiff's actions in faking interest. Certainly, Mr. Lurie was not the 'guiding spirit' or 'central figure' behind Plaintiff's own conduct.

**Conclusion**

Plaintiff's First Amended Complaint must be stricken, or in the alternative, must be dismissed in its entirety, and with prejudice, pursuant to FRCP. R. 12(b)(2). Dismissal is also warranted under FRCP R. 12(b)(6).

NOW THEREFORE, Defendant Lewis Lurie respectfully requests this Honorable Court Grant his Motion to Dismiss the First Amended Complaint against him.

RESPECTFULLY SUBMITTED THIS 25th day of June 2020.

/s/ Lewis Lurie
Lewis Lurie, PRO SE
5841 NW 122nd Drive
Coral Springs, FL 33076
Email: lewis92363@gmail.com
Phone: (954) 234-8469

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 25th day of June, 2020, with the Clerk of the Court using the CM/ECF system which will send notification to all parties who have requested to be noticed, including:

| TERRELL MARSHALL LAW GROUP | PARONICH LAW, P.C. |
|---|---|
| Beth E. Terrell | Anthony I. Paronich |
| Jennifer Rust Murray | 350 Lincoln Street, Suite 2400 |
| Adrienne D. McEntee | Hingham, Massachusetts 22043 |
| 936 North 34th Street, Suite 300 | Phone: (617) 485-0018 |
| Seattle, Washington 98103-8869 | Fax: (503) 318-8100 |
| Phone: (206) 816-6603 | Anthony@paronichlaw.com |
| BTerrell@terrellmarshall.com | |
| JMurray@terrellmarshall.com | Attorney for Plaintiff |
| AMcentee@terrellmarshall.com | |

Attorneys for Plaintiff

                                                /s/ Lewis Lurie
                                                Lewis Lurie, PRO SE