THE HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MARK HOFFMAN, on behalf of himself and all
others similarly situated,

       Plaintiff,

  vs.

HEARING HELP EXPRESS, INC., TRIANGULAR
MEDIA CORP., and LEWIS LURIE,

      Defendants.

NO. 3:19-cv-05960-RBL

**PLAINTIFF'S RESPONSE TO DEFENDANT
LEWIS LURIE'S MOTION TO DISMISS**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................1

III.  STATEMENT OF ISSUES .................................................................................5

IV.   ARGUMENT AND AUTHORITY ......................................................................5

      A.    The Court has specific personal jurisdiction over Lewis Lurie ..........5

            1.    Lurie purposefully directed his activities towards Washington .............7

                  a.    An intentional act ....................................................................7

                  b.    Express aiming ..........................................................................8

                  c.    Effects of conduct....................................................................9

                  d.    The fiduciary shield doctrine does not apply ...........................10

            2.    Plaintiff's claims against Lurie relate to his activities in Washington...12

            3.    Requiring Lurie to defend in Washington is reasonable .....................12

                  a.    Factors one and two, purposeful interjection and the burden
                        to defend in Washington, weigh in Plaintiff's favor ................13

                  b.    Factors three and four, sovereignty concerns and
                        Washington's interest, weigh in Plaintiff's favor. ...................13

                  c.    Factors five, six, and seven, efficient resolution,
                        burden on plaintiff to litigate in Florida, and alternative
                        forums, weigh in Plaintiff's favor .............................................14

      B.    In the alternative, Plaintiff should be allowed to conduct
            jurisdictional discovery...................................................................14

      C.    Plaintiff has sufficiently pled his claims under the TCPA. ................15

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1.      The complaint plausibly states claims for individual liability
        against Lurie ......................................................................................16

2.      Plaintiff alleges that he received more than one spam phone
        call made with an ATDS during a 12-month period .............................17

D.      Should the Court Find the Complaint to be deficient, leave to
        amend is warranted ........................................................................19

V.      CONCLUSION .........................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## TABLE OF AUTHORITIES

Page

*Alternative Legal Solutions v. Ferman Management Services, Corp.,*
  2008 WL 65584 (D. Or. Jan. 4, 2008)............................................................................14

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................................15

*Baker v. Caribbean Cruise Line, Inc.,*
  No. CV 13-8246, 2014 WL 880634 (D. Ariz. Mar. 6, 2014).....................................8, 10

*Baltimore-Wash. Tele. Co. v. Hot Leads Co.,*
  584 F. Supp. 2d 736 (D. Md. 2008)..............................................................................17

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
  223 F.3d 1082 (9th Cir. 2000)....................................................................................6, 9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................................15

*Blair v. CBE Group, Inc.,*
  No. 13-cv-134-MMA (WVG), 2013 WL 2029155 (S.D. Cal. May 13, 2013)..................14

*Calder v. Jones,*
   465 U.S. 783 (1984)....................................................................................................7, 10

*Calix Networks, Inc. v. Wi-Lan, Inc.,*
  No. 09-cv-06038-CRB (DRM), 2010 WL 3515759 (N.D. Cal. Sept. 8, 2010).................14

*Chandler v. Roy,*
  985 F. Supp. 1205 (D. Ariz. 1997) ..............................................................................12

*Charvat v. Allstate Corp.,*
  29 F. Supp. 3d 1147 (N.D. Ill. 2014) ............................................................................15

*CollegeSource, Inc. v. AcademyOne, Inc.,*
  653 F.3d 1066 (9th Cir. 2011)..........................................................................................6

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
  173 F.3d 725 (9th Cir. 1999).........................................................................................16

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009)..............................................................15, 17

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)....................................................................6

*Davis v. Metro Prod., Inc.*,
    885 F.2d 515 (9th Cir. 1989)....................................................................11

*E&E Co., Ltd. v. Kam Hin Enter., Inc.*,
    429 Fed. Appx. 632 (9th Cir. 2001)......................................................11, 12

*eMag Sols., LLC v. Toda Kogyo Corp.*,
    No. C 02-1611, 2006 WL 3783548 (N.D. Cal. Dec. 21, 2006) .......................14

*Flores v. Adir Int'l, LLC*,
    685 F. App'x 533 (9th Cir. 2017)..............................................................18

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018)...............................................................6, 12

*Garrison v. Bally Total Fitness Holding Corp.*,
    No. 04-1331-PK, 2005 WL 3143105 (D. Or. Nov. 23, 2005) .........................11

*Gen. Ads, LLC v. Breitbart*,
    435 F. Supp. 2d 1116 (W.D. Wash. 2006)...................................................12

*Global Commc'ns, Inc. v. Blue Jay, Inc.*,
    No. C 08-4254 PJH, 2009 WL 29905 (N.D. Ca. Jan. 5, 2009) .........................9

*Gordon v. DTE Energy*,
    680 F. Supp. 2d 1282 (W.D. Wash. 2010)...............................................8, 9

*Gragg v. Orange Cab Co., Inc.*,
    C12-0576RSL, 2013 WL 195466 (W.D. Wash. Jan. 17, 2013).......................19

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. May 12, 2003) .....................................................15

*j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*,
    No. C 08-4254 PJH, 2009 WL 29905, at *9 (N.D. Ca. Jan. 5, 2009) ...................... 11, 15

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Hudak v. Berkley Grp., Inc.*,
  No. 3:13-CV-00089, 2014 WL 354676 (D. Conn. Jan. 23, 2014) ..................................8

*In re Joint Petition. filed by Dish Network, UC*,
  28 F.C.C.R. 6574 (2013)........................................................................................15

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)................................................................................................6

*Kristensen v. Credit Payment Servs.*,
  12 F. Supp. 3d 1292 (D. Nev. 2014) ...................................................................15, 16

*L&A Designs, LLC v. Xtreme ATVs, Inc.*,
  860 F. Supp. 2d 1196 (D. Or. 2012) ............................................................................10

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000)......................................................................................19

*Luna v. Shac, LLC*, No. C14-006607,
  2014 WL 3421514, (N.D. Cal. July 14, 2014)............................................................8, 9

*Maryland v. Univ. Elections*,
  787 F. Supp. 2d 408 (D. Md. 2011) ............................................................................17

*Mattel, Inc. v. Greiner and Hausser GmbH*,
  354 F.3d 857 (9th Cir. 2003)......................................................................................12

*Motorcar Parts of Am., Inc. v. FAPL Holdings Inc.*,
  No. CV 14-1153 GW (CWX), 2015 WL 12746204 (C.D. Cal. Feb. 6, 2015)....................14

*Naiman v. Blue Raven Solar*,
  No. 2:19-cv-01643, ECF 41 (D. Nev. Filed July 2, 2020) ...............................................17

*Ott v. Mortg. Investors Corp. of Ohio, Inc.*,
  65 F. Supp. 3d 1046 (D. Or. 2014) ....................................................................9, 10, 13

*Panavision, Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998)......................................................................................13

*Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*,
  No. C13-01347-JCC, 2014 WL 12103245 (W.D. Wash. Nov. 4, 2014) ..................*passim*

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - v
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*Seagate Tech. v. A.J. Kogyo Co.*,
   219 Cal. App. 3d 696, 268 Cal. Rptr. 586 (1990) .......................................................12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F. 3d 797 (9th Cir. 2004) ..............................................................................6, 7

*Silver Valley Partners, LLC v. De Motte*,
   400 F. Supp. 2d 1262 (W.D. Wash. 2005) ..........................................................7

*State of Wash., Dep't of Revenue v. www.dirtcheapcig.com, Inc.*,
   260 F. Supp. 2d 1048 (W.D. Wash. 2003) ..........................................................7

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...........................................................................16

*Texas v. American Blastfax, Inc.*,
   164 F. Supp. 2d 892 (W.D. Tex. 2001) .............................................................11

*Washington v. Six Continents Hotels, Inc.*,
   No. 2:16-cv-03719-ODW-JEM, 2018 WL 4092024 (C.D. Cal. Aug. 24, 2018) ..............18

*Weyerhaeuser Co. v. Keating Fibre Int'l, Inc.*,
   416 F. Supp. 2d 1041 (W.D. Wash. 2006) ..........................................................5

*Whalen v. Nat'l Occupational Health Strategies, LLC*,
   No. C05-0915RSM, 2006 WL 223741 (W.D. Wash. Jan. 25, 2006)...........................11

*Wolf Designs*,
   322 F. Supp. 2d at 1072.......................................................................................10

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006)..............................................................6, 7, 13

**FEDERAL RULES AND STATUTES**

Fed. R. Civ. P. 8 ...........................................................................................5, 19

Fed. R. Civ. P. 12(b)(6)..................................................................................5, 15

47 U.S.C. § 217 ..................................................................................................18

47 U.S.C. § 227..................................................................................................1

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - vi
CASE NO. 3:19-CV-05960-RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

47 U.S.C. § 227(b)(1)(a) ......................................................................................... 17

47 U.S.C. § 227(b)(1)(a)(iii) .................................................................................... 16

47 U.S.C. § 227(c) ............................................................................................ 16, 17

47 C.F.R. § 64.1200(c)(2) ................................................................................. 16, 18

28 F.C.C.R. 6574 .................................................................................................... 16

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## I.  INTRODUCTION

2      Plaintiff Mark Hoffman respectfully asks the Court to deny Defendant Lewis Lurie's

3 motion to dismiss. Lurie is the owner, operator, and Vice President of Triangular Media.

4 Triangular Media employs a large network of third-party call centers to generate leads for its

5 clients, including Hearing Help. Lurie chose which third-party call centers to use, authorized

6 Triangular Media to accept leads generated by those call centers, and then sold those leads to

7 Hearing Help. Lurie was Hearing Help's primary contact at Triangular Media and directly

8 participated in the telemarketing practices that Plaintiff alleges violated the Telephone

9 Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). These facts support the Court's specific

10 jurisdiction over Lurie. However, should the Court determine that Plaintiff's allegations are

11 inadequate, Plaintiff seeks permission to conduct jurisdictional discovery and amend their

12 Complaint.

13

## II.  STATEMENT OF FACTS

14      Plaintiff Mark Hoffman alleges he received unsolicited telephone calls to his cell phone

15 number, which is listed on the national Do Not Call Registry, and that the calls came from

16 Hearing Help, Triangular Media, and Lurie, in violation of the TCPA. First Amended Complaint

17 ("FAC") ¶¶ 3, 8, 16, 18-19, 51-52. Lurie is the owner, operator and Vice President of Triangular

18 Media, a Florida corporation that Hearing Help hired to generate leads for a nationwide

19 telemarketing campaign. FAC ¶¶ 12-13.

20      Lurie personally participated in the calls by choosing the call centers used to generate

21 leads and because he personally authorized Triangular Media's telemarketing conduct. FAC

22 ¶¶ 14-15. These allegations have been confirmed through basic investigation and discovery.

23 Until November 3, 2019, Triangular Media's web site boasted of working "with a large

24 network of call centers that generate both data and live transfer leads." Declaration of

25

26

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 1
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   Adrienne D. McEntee ("McEntee Dec."), Ex. 21.[1] Triangular Media admits it hired call center,

2   Skyscrapers, to originate "prospects" for Hearing Help. ECF 40-1 ¶¶ 9-10. Triangular Media

3   also produced a list of phone numbers Skyscrapers called, for which Triangular Media admits

4   there was no consent. McEntee Dec., Exs. 8-9; ECF 40-2 ¶¶ 14-16. The list includes Plaintiff's

5   phone number and three others with Washington area codes. McEntee Dec., Ex. 9.

6        Plaintiff received at least seven calls to his cell phone from Triangular Media or call

7   centers Lurie chose. FAC ¶¶ 3, 18-19. Plaintiff's cell phone, which was located in Washington

8   and uses a Washington area code, is on the national Do Not Call Registry. FAC ¶¶ 5, 8, 16.

9   Plaintiff has never been a Hearing Help customer and never consented to receive the calls, all

10  of which came from the same Caller ID. *Id*. ¶¶ 17, 20. On June 13, 2019, Plaintiff answered the

11  call, the call was transferred, and he heard a prerecorded message. *Id*. ¶ 21. It was clear to

12  Plaintiff that the call was made with an ATDS because he noted a pause before being

13  connected to the call, which is characteristic of a call placed by an ATDS. *Id*. ¶ 28. Moreover,

14  when Plaintiff called back the telephone number on the Caller ID, (855) 255-8148, he received

15  a message that stated, "the number you have dialed is not in service," which means the phone

16  number used to call him was "spoofed," another indication that an ATDS was used. *Id*. ¶ 29.

17       During the period in which Plaintiff received the calls, Lurie was the primary contact

18  with Hearing Help and regularly corresponded on Triangular Media's behalf regarding lead

19  management and payment matters. McEntee Decl., Exs. 10-20. Though he attempts to

20  minimize his role, Lurie has owned and operated Triangular Media since 2005. *Id*., Ex. 1.

21  Previously known as Dcisive, in 2007 Lurie changed the company name to Triangular Media

22  and listed his title as CFO. *Id*., Exs. 1-2. A year later, Lurie petitioned for Chapter 13

23  bankruptcy. *Id*., Ex. 3. There, he listed his business interests, including a one-third ownership

24  interest in "Decisive Inc/Triangular Media, Inc." *Id*. The petition listed his wife, Dana Lurie, as a

25

26  [1] Since the lawsuit, however, "Triangularmedia.com is no longer accepting new orders."
    McEntee Dec., Ex. 22.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  co-debtor. *Id*. She is also an executive at Triangular Media. ECF 40-1 ¶ 1. While his bankruptcy

2  was pending, Lurie first converted Triangular Media to a limited liability company, and then

3  later dissolved it. McEntee Decl. Exs. 4-5. In 2016, two years after he was discharged from

4  bankruptcy, Lurie incorporated the company again and named himself Vice President. *Id*., Exs.

5  6, 7.[2]

6      Together, this evidence subjects Lurie to the Court's jurisdiction.

### III.  STATEMENT OF ISSUES

8      1.      Whether the Court may exercise specific personal jurisdiction over Mr. Lurie

9  consistent with the Due Process Clause of the U.S. Constitution.

10     2.      In the alternative, where pertinent facts bearing on personal jurisdiction are

11  controverted or a more satisfactory showing of the facts is required, whether Plaintiff is

12  entitled to jurisdictional discovery.

13     3.      Whether Plaintiff has stated a claim under Fed. R. Civ. P. 12(b)(6) against Mr.

14  Lurie.

15     4.      Assuming Plaintiff has not pled sufficient facts to meet the plausibility standard

16  of Fed. R. Civ. P. 8, whether leave to amend is appropriate.

### IV.  ARGUMENT AND AUTHORITY

18  **A.     The Court has specific personal jurisdiction over Lewis Lurie.**

19     In absence of a federal statute that governs personal jurisdiction, a court's

20  jurisdictional inquiry begins with the forum state's long-arm statute. *Weyerhaeuser Co. v.*

21  *Keating Fibre Int'l, Inc.*, 416 F. Supp. 2d 1041, 1043 (W.D. Wash. 2006). Washington's long-arm

22  statute "extends the court's personal jurisdiction to the broadest reach that the United States

23  Constitution permits." *Id*. at 1044. To comport with federal due process, a nonresident

24  _____

25  [2] Lurie cites the web site for the Illinois Secretary of State in support of his contention that "[a]
simple search of the Secretary of State records for each corporation will show that Mr. Lurie is

26  not an owner or officer of either of the corporation defendants." ECF 52 ¶ 17. However,
records from the Florida Department of State, Division of Corporations contradict this

27  assertion. McEntee Dec., Exs. 1, 2, 4, 5, 7.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    defendant must have sufficient minimum contacts with the forum state such that the exercise

2    of jurisdiction will not offend "traditional notions of fair play and substantial justice." *Int'l*

3    *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

4            Constitutional due process is satisfied if the court has either general or specific

5    jurisdiction over the defendant. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082,

6    1086 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le*

7    *Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). For specific jurisdiction,

8    which Plaintiff asserts here, the Ninth Circuit applies a three-part test to determine whether

9    due process allows for the exercise of jurisdiction: (1) the defendant must purposefully direct

10   his activities at the forum *or* avail himself of the privilege of conducting business in the forum

11   state, thereby invoking the protections of its laws; (2) the claim must arise out of the

12   defendant's forum-related activities; (3) exercising jurisdiction must be reasonable, meaning

13   that it comports with "fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor*

14   *Co.,* 374 F. 3d 797, 802 (9th Cir. 2004). If a plaintiff makes a *prima facie* showing of first two

15   elements, then the burden shifts to the defendant make a "compelling case" why exercising

16   personal jurisdiction would be unreasonable. *Id.*

17           While the party seeking to invoke jurisdiction of the federal court has the burden of

18   establishing that such jurisdiction exists, at this stage of the litigation, the plaintiff need only

19   make, through pleadings and affidavits, a *prima facie* showing of the jurisdictional facts.

20   *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (reversing

21   dismissal where plaintiff made a *prima facie* showing of jurisdictional facts); *Data Disc, Inc. v.*

22   *Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (same). In ruling on a Rule

23   12(b)(2) motion, "uncontroverted allegations in the complaint must be taken as true, and

24   factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v.*

25   *Aero Law Grp.,* 905 F.3d 597, 602 (9th Cir. 2018).

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Here, the allegations in the FAC and the information obtained through discovery unequivocally support personal jurisdiction over Lurie. Even if, as Lurie contends at ECF 52-1 ¶¶ 1-8, he performed all "functions" for Triangular Media "entirely from Florida," and does not own property in Washington, have accounts here, or pay Washington taxes, Lurie's actions subject him to the Court's specific jurisdiction. *Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1267 (W.D. Wash. 2005) (finding specific jurisdiction where individual utilized the telephone to solicit in Washington, even though he did not travel to Washington).

   1.   <u>Lurie purposefully directed his activities towards Washington.</u>

The Ninth Circuit applies the "effects test" to determine the "purposeful direction" prong, which requires analysis of three elements: (1) an intentional act by the defendant, (2) expressly aimed at Washington, and (3) causing harm that the defendant knows will likely be suffered in Washington. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). This test does not require the defendant's physical presence in Washington, provided the defendant's efforts are purposefully directed to forum residents. *State of Wash., Dep't of Revenue v. www.dirtcheapcig.com, Inc.*, 260 F. Supp. 2d 1048, 1051 (W.D. Wash. 2003) (hereinafter *dirtcheapcig.com*). Plaintiff satisfies all three elements.

   a.   *An intentional act.*

An intentional act requires "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act," as well as an "intentional manifestation of the actor's will." *Schwarzenegger*, 374 F.3d at 806. Contrary to Lurie's contention that Plaintiff must establish he individually performed some act, which he denies having done (ECF 52-1 ¶ 11), courts have repeatedly found that the output of an automated system, such as a robocall, constitutes intentional conduct for purposes of determining personal jurisdiction. *Rinky Dink, Inc. v. Elec. Merch. Sys., Inc.*, No. C13-01347-JCC, 2014 WL 12103245, at *3 (W.D. Wash. Nov. 4, 2014) (specific jurisdiction over owner of

1   company who worked with another defendant to make or directed calls held proper); *Luna v.*

2   *Shac, LLC*, No. C14-006607, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (intentional

3   sending of unsolicited text messages to California cell phone numbers was purposefully

4   directed activity that subjected defendant to personal jurisdiction); *Baker v. Caribbean Cruise*

5   *Line, Inc.*, No. CV 13-8246, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (specific jurisdiction

6   proper in suit regarding unsolicited calls defendant made to plaintiff's forum state telephone);

7   *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089, 2014 WL 354676, at *2–3 (D. Conn. Jan. 23,

8   2014) (same); *see also Gordon v. DTE Energy*, 680 F. Supp. 2d 1282, 1285 (W.D. Wash. 2010)

9   (holding output of automated system constitutes an intentional act "because it is a

10  manifestation of its operator's will").

11       Lurie also contends that he has never engaged in telemarketing or directed others to

12  engage in telemarketing. ECF 52-1 ¶ 10. However, Lurie's statement contradicts other

13  evidence submitted by Triangular Media, in which the company admitted to having hired call

14  center, Skyscraper, to make calls. ECF 40-1. Evidence that Lurie is a director and officer of the

15  company and was the primary contact with Hearing Help who oversaw lead generation,

16  including making sure Hearing Help paid Triangular for leads, also runs counter to Lurie's

17  claims. McEntee Dec., Exs. 1–7, 10–20. Moreover, until recently, Triangular Media's web site

18  freely admitted that the Lurie's company works "with a large network of call centers that

19  generate both data and live transfer leads" and offers "to custom tailor scripts to your specific

20  needs and pre-qualify prospects so that you only speak with individuals who meet the

21  requirements for your specific product or service." McEntee Dec., Exs. 21–22. Plaintiff has

22  made a *prima facie* showing that Lurie's direction to Triangular Media, or third-party call

23  centers, to generate leads for Hearing Help through telemarketing was an intentional act.

24       b.    *Express aiming.*

25       "The express aiming requirement is satisfied 'when the defendant is alleged to have

26  engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 6
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  resident of the forum state.'" *Gordon*, 680 F. Supp. 2d at 1285 (quoting *Bancroft & Masters*,

2  223 F.3d 1082 at 1087. In TCPA cases, courts have held the express aiming element is satisfied

3  when a defendant directs calls to phone numbers with area codes connected to the forum.

4  *See Ott v. Mortg. Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1060–61 (D. Or. 2014)

5  (where each area code is associated with a specific state, corporate officers should have

6  should have known that telemarketing to Oregon telephone numbers would cause harm to

7  persons in Oregon); *Rinky Dink*, 2014 WL 12103245, at *3 (express aiming satisfied where, as

8  part of telemarketing scheme, officer directed calls to phone numbers with Washington area

9  codes); *Luna*, 2014 WL 3421514, at *3–4 (defendant lacked actual knowledge of plaintiff's

10  residence but nonetheless aimed conduct at California by sending text messages to phones

11  with California area codes).

12     Here, Lurie implemented a telemarketing scheme that, although national in scope, was

13  specifically designed to (and did) reach Washington residents by contacting them directly on

14  their telephones. FAC ¶ 12; McEntee Dec., Exs. 8–9. As Vice President and the primary contact

15  with Hearing Help, Lurie had access to the area codes associated with leads third-party call

16  centers generated, and therefore knew that the calls were directed to Washington where

17  Plaintiff resides and where the effects of the robocalls would be felt. Indeed, Triangular

18  produced a list of phone numbers in response to Plaintiff's subpoena that proves calls were

19  made to Washington area codes. *Id.*, Ex. 9. The Court should find that Lurie expressly aimed

20  the conduct of Triangular Media and its third-party call centers at Washington residents.

21         c.   *Effects of conduct.*

22     This element requires that the defendant cause harm that it reasonably knows is likely

23  to be felt in the forum state. *Gordon*, 680 F. Supp. 2d at 1286; *j2 Global Commc'ns, Inc. v. Blue

24  Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *9 (N.D. Ca. Jan. 5, 2009) (holding that

25  defendant knew or should have known that his conduct would cause plaintiff to suffer harm in

26  California). Several district courts have found the exercise of specific personal jurisdiction

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    proper in cases involving alleged TCPA violations based on calls made to a plaintiff's cell phone

2    in the forum state. *See Ott*, 65 F. Supp. 3d 1046 at 1060–61; *Rinky Dink*, 2014 WL 12103245;

3    *Luna,* 2013 WL 6571629; *Baker,* 2014 WL 880634; *Branham v. ISI Alarms, Inc.,* No. 12–CV–

4    1012 (ARR)(MDG), 2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013) ("[S]ince the TCPA is essentially

5    a strict liability statute . . . defendants reasonably should have anticipated that the use of [an

6    automated] system to call a New York cell-phone number could subject them to being held

7    into court in New York."); *Hudak,* 2014 WL 354676. This case is no different than *Ott, Rinky*

8    *Dink, Luna, Baker, Branham* and *Hudak*. "Drawing inferences in Plaintiffs' favor, the

9    knowledge that Washington area codes were being called suffices to establish a prima facie

10   case for personal jurisdiction." *Rinky Dink, Inc.*, 2014 WL 12103245, at *3 (citation omitted).

11                  d.      *The fiduciary shield doctrine does not apply.*

12          Notwithstanding the fact that Lurie purposefully availed himself of the benefits of

13   doing business in Washington by expressly aiming his actions at Washington for commercial

14   gain, he argues he is not personally liable because the calls were made by Triangular Media

15   (or downstream call centers), the corporate entity Lurie has owned and operated since 2005.

16   ECF 52 ¶ 18. Lurie's argument is based on the fiduciary shield doctrine, a doctrine developed

17   to protect "mere employees" from being hauled into court based on actions taken on behalf

18   of the company. *L&A Designs, LLC v. Xtreme ATVs, Inc.*, 860 F. Supp. 2d 1196, 1199 (D. Or.

19   2012). However, the U.S. Supreme Court, in *Calder v. Jones*, held that an employee may be

20   subject to personal jurisdiction when they are a "primary participant" in the alleged

21   wrongdoing. *Calder*, 465 U.S. at 789–90. "Primary participants are those individuals who had

22   'control of and direct participation in the alleged activities.'" *L&A Designs*, 860 F. Supp. 2d at

23   1199 (quoting *Wolf Designs*, 322 F. Supp. 2d at 1072). Therefore, corporate officers remain

24   liable for any tort they authorized, directed, or participated in, regardless of whether they

25   were acting on behalf of the company at the time. *Wolf Designs*, 322 F. Supp. 2d at 1072.

26

27

1    Lurie's reliance on *Davis v. Metro Prod., Inc.* to support his argument is misplaced

2    because the fiduciary shield doctrine does not apply where, as here, the long-arm statute is

3    coextensive with the Due Process Clause of the U.S. Constitution. *Davis v. Metro Prod., Inc.*,

4    885 F.2d 515, 522 (9th Cir. 1989). The *Davis* court reasoned that in such cases, the court

5    applies the constitutional due process analysis to the contacts of the individuals concerned

6    and does not consider the existence of a corporate form to create a due process limit on

7    jurisdiction. *Id.*; *see also Whalen v. Nat'l Occupational Health Strategies, LLC*, No. C05-

8    0915RSM, 2006 WL 223741 (W.D. Wash. Jan. 25, 2006) (finding individual defendant subject

9    to personal jurisdiction based upon their actions on behalf of corporation); *Garrison v. Bally*

10   *Total Fitness Holding Corp.*, No. 04-1331-PK, 2005 WL 3143105, at *2 (D. Or. Nov. 23, 2005)

11   ("Where a state's long arm statute extends to what is allowed by the constitutional due

12   process requirements, as they do in Oregon, there is no fiduciary shield protection and the

13   court may assert personal jurisdiction over the individuals.").

14    Here, Plaintiff alleges not only that Lurie was an officer and director of Triangular

15   Media, but also alleges specific actions taken by Lurie that demonstrate that he was a

16   "primary participant" in violating the TCPA. *See Wolf Designs*, 322 F. Supp. 2d at 1073 (finding

17   that because defendant made final decisions regarding products to sell and was "moving

18   force" in creating policy and making decisions on behalf of company, he was more than "mere

19   employee" and fiduciary shield doctrine was inapplicable.); *j2 Global Commc'ns, Inc.*, 2009 WL

20   29905, at *9 (finding fiduciary shield doctrine inapplicable and minimum contacts present

21   where defendant authorized bulk faxing, set company policy, and oversaw day-to-day

22   operations). Indeed, Lurie's participation in the campaign that violated the TCPA subjects him

23   to direct liability under the TCPA. *Id.* at *9 (citing *Texas v. American Blastfax, Inc.*, 164 F. Supp.

24   2d 892, 898 (W.D. Tex. 2001)) (finding owner of blast fax service may be directly liable under

25   the TCPA if that person directly participated in or personally authorized the conduct violating

26   the TCPA); *see also E&E Co., Ltd. v. Kam Hin Enter., Inc.*, 429 Fed. Appx. 632, 634 (9th Cir.

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 9
CASE NO. 3:19-CV-05960-RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   2001) ("Under the minimum contacts test, 'if a corporate officer may be held personally

2   responsible for causing the corporation to act, that act may be imputed to the officer for

3   purposes of establishing personal jurisdiction over him.'") (quoting *Seagate Tech. v. A.J. Kogyo*

4   *Co.*, 219 Cal. App. 3d 696, 268 Cal. Rptr. 586, 590 (1990)).

5          2.      Plaintiff's claims against Lurie relate to his activities in Washington.

6          The Ninth Circuit applies a "but for" test to establish the second element of its specific

7   jurisdiction test. *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003).

8   This means that Plaintiff must demonstrate he would not have suffered the injury "but for"

9   Lurie's forum related activities. This requirement is easily satisfied. But for Lurie's personal

10  authorization of Triangular Media's telemarketing conduct, including the choice of call centers

11  used to generate leads for Hearing Help, Mr. Hoffman would not have suffered any injury. *See*

12  *Gen. Ads, LLC v. Breitbart*, 435 F. Supp. 2d 1116, 1123 (W.D. Wash. 2006) (holding that

13  individual defendant's conduct related to partnering with defendant corporation was

14  sufficient to satisfy this prong).

15         3.      Requiring Lurie to defend in Washington is reasonable.

16         Because Plaintiff has successfully made a *prima facie* showing of the first two prongs of

17  specific jurisdiction, the burden shifts to the defendant to show compelling reasons why

18  exercising personal jurisdiction would be unreasonable. *Chandler v. Roy*, 985 F. Supp. 1205,

19  2012 (D. Ariz. 1997). The Ninth Circuit uses a seven-factor balancing test to evaluate

20  reasonableness. *Freestream*, 905 F.3d at 607–609. The factors are: "(1) the extent of the

21  defendant's purposeful interjection into the forum state's affairs; (2) the burden on the

22  defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

23  defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most

24  efficient judicial resolution of the controversy; (6) the importance of the forum to the

25  plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative

26  forum." *Id*. In the present case, the seven-factor balancing test weighs in Plaintiff's favor. At

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 10
CASE NO. 3:19-CV-05960-RBL

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    worst it's "a wash." *Id*. at 609. Either way, Lurie has failed to make a compelling case as to why

2    exercising jurisdiction over him would be so unreasonable as to violate due process.

3              *a.  Factors one and two, purposeful interjection and the burden to defend in
                    Washington, weigh in Plaintiff's favor.*

4

5          Lurie has personally interjected himself into Washington by authorizing Triangular

6    Media and the downstream call centers he chose to implement Hearing Help's telemarketing

7    scheme that exploits Washington residents for his own commercial benefit. *Rinky Dink*, 2014

8    WL 12103245, at *4 (finding individual "personally injected" himself into Washington by

9    through involvement in a telemarketing scheme that would reach Washington residents).

10   While litigating in another state may be inconvenient, that alone does not constitute a

11   compelling reason that would allow the defendant to evade valid jurisdiction. Lurie has failed

12   to present evidence that the "inconvenience is so great as to constitute a deprivation of due

13   process." *Panavision, Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) *holding*

14   *modified by Yahoo! Inc.*, 433 F.3d 1199.

15             *b.  Factors three and four, sovereignty concerns and Washington's
                    interest, weigh in Plaintiff's favor.*

16

17         Lurie has not presented compelling evidence that Washington's exercise of jurisdiction

18   would violate Florida's sovereignty. As the TCPA is a federal law, there is no conflict with

19   Florida state law. Thus, no sovereignty concerns are implicated by Washington's exercise of

20   personal jurisdiction over Lurie. Moreover, Washington has an interest in protecting its

21   citizens from illegal telemarketing. The Ninth Circuit assumes that a forum state " 'maintains a

22   strong interest in providing an effective means of redress for its residents tortiously injured.' "

23   *Ott*, 65 F. Supp. 3d 1058–59 (citing *Panavision*, 141 F.3d at 1323 (quotation omitted)).

24   Accordingly, factors three and four favor jurisdiction in Washington.

25

26

27

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

>    c.   *Factors five, six, and seven, efficient resolution, burden on plaintiff to litigate in Florida, and alternative forums, weigh in Plaintiff's favor.*

Judicial economy favors resolving a plaintiff's claims in the forum state when the plaintiff also has claims against other defendants. *Rinky Dink*, 2014 WL 12103245, at *4 ("Judicial economy favors resolving Plaintiffs' claims against Gehrs in Washington with the claims against Defendants EMS and CallFire"); *Motorcar Parts of Am., Inc. v. FAPL Holdings Inc.*, No. CV 14-1153 GW (CWX), 2015 WL 12746204, at *6 (C.D. Cal. Feb. 6, 2015) (where plaintiff asserted claims against other defendants, "splitting the case—with the potential for application in separate matters of different laws and conflicting rulings—makes little sense"). Here, Plaintiff also has claims against Triangular Media and Hearing Help. Thus, judicial economy favors resolving Plaintiff's claims against Lurie together with his claims against the other defendants. Moreover, litigating in Florida would require Plaintiff to retain local counsel. McEntee Dec. ¶ 24. Finally, while there is an alternate forum in Florida, that fact alone "should not compel a finding that jurisdiction... is somehow unreasonable." *Alternative Legal Solutions v. Ferman Management Services, Corp*., 2008 WL 65584, at *9 (D. Or. Jan. 4, 2008). Together, these factors weigh in favor of exercising jurisdiction over Lurie.

**B.    In the alternative, Plaintiff should be allowed to conduct jurisdictional discovery.**

If the Court finds that Plaintiff has not made a *prima facie* showing that personal jurisdiction over Lurie is proper, Plaintiff respectfully requests that the Court continue the hearing on this motion to allow Plaintiff to conduct jurisdictional discovery. *See Blair v. CBE Group, Inc*., No. 13-cv-134-MMA (WVG), 2013 WL 2029155, at *2-3 (S.D. Cal. May 13, 2013) (granting jurisdictional discovery because "at least some evidence exists that [defendant] directed its activities to residents of this District"). In the Ninth Circuit, courts have held that "a plaintiff need not make out a *prima facie* case of personal jurisdiction before it can obtain jurisdictional discovery." *Calix Networks, Inc. v. Wi-Lan, Inc*., No. 09-cv-06038-CRB (DRM), 2010 WL 3515759, at *4 (N.D. Cal. Sept. 8, 2010) (citing *eMag Sols., LLC v. Toda Kogyo Corp*., No. C 02-1611, 2006 WL 3783548, at *2 (N.D. Cal. Dec. 21, 2006)). While trial courts are vested

1  with broad discretion in discovery issues, the Ninth Circuit has reversed for abuse of discretion

2  when further discovery "might well" have established a basis for personal jurisdiction. *Harris*

3  *Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd*., 328 F.3d 1122, 1135 (9th Cir. May 12,

4  2003).

5        Particularly in TCPA cases, courts have recognized the unreasonableness of requiring a

6  plaintiff to parse out the often convoluted relationship among parent corporations, direct

7  sellers, and third party call centers without the opportunity to conduct discovery. *See*

8  *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (finding a

9  plaintiff "need not plead the identity of every player in the alleged scheme nor every nuance

10 of the relationships among the Defendants; indeed, the information necessary to connect all

11 the players is likely in Defendants' sole possession."); *see also Charvat v. Allstate Corp.,* 29 F.

12 Supp. 3d 1147, 1151 (N.D. Ill. 2014) (rejecting defendant's argument that plaintiff's complaint

13 was deficient as "meritless because it is defendants, not plaintiff, who can reasonably be

14 expected to know these facts" and stating that plaintiff was entitled to discovery on the issue

15 of vicarious liability under *Dish*); *see also In re Joint Petition. filed by Dish Network, UC*, 28

16 F.C.C.R. 6574, 6593 at n. 139 (2013) ("nothing in our ruling requires a consumer to prove at

17 the time of their complaint (rather than reasonably allege) that a call was made on the seller's

18 behalf"). Thus, jurisdictional discovery is proper.

19 **C.        Plaintiff has sufficiently pled his claims under the TCPA.**

20        When deciding a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as

21 true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d

22 1063, 1067 (9th Cir. 2009). If the Court finds that the plaintiff pled "enough facts to state a

23 claim to relief that is plausible on its face" then it should deny the motion to dismiss. *Bell Atl.*

24 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

25 pleads factual content that allows the court to draw the reasonable inference that the

26 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

27

1   The plausibility standard asks only whether the complaint "'raises[s] a reasonable expectation

2   that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202,

3   1217 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

4        1.    <u>The complaint plausibly states claims for individual liability against Lurie.</u>

5        The TCPA broadly prohibits "any person" from placing robocalls to a person's cell

6   phone without prior express consent. 47 U.S.C. § 227(b)(1)(a)(iii). The statute and regulations

7   also prohibit any "person" from making phone solicitations to people who list their phone

8   numbers on a National Do Not Call Registry without consent more than once within any 12–

9   month period. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). In 2013, the Federal

10  Communications Commission ("FCC") clarified that while a seller does not generally "initiate"

11  calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless

12  may be held vicariously liable under federal common law principles of agency for violations of

13  either section 227(b) or section 227(c) of the TCPA that are committed by third-party

14  telemarketers. *See* FCC Declaratory Ruling in re Petition filed by DISH Network, LLC for

15  Declaratory Ruling Concerning TCPA Rules, 28 F.C.C.R. 6574, 6586-87. Under this standard, the

16  precise details of the agency relationship need not be pleaded to survive a motion to dismiss,

17  as long as sufficient facts are offered to support a reasonable inference that an agency

18  relationship exists. *Kristensen v. Credit Payment Servs.*, No. 2:12-CV-00528, 2014 WL 1256035,

19  at *4 (D. Nev. Mar., 26, 2014).

20       A corporate director or officer may be held liable "for all torts which he authorizes or

21  directs or in which he participates, notwithstanding that he acted as an agent of the

22  corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co*.,

23  173 F.3d 725, 734 (9th Cir. 1999) (holding officer liable as an individual for false

24  representations under the Lanham Act). Numerous district courts have applied this general

25  agency principle in TCPA cases and concluded there was personal jurisdiction over individual

26  officers. *See, e.g., Rinky Dink*, 2014 WL 12103245, at *6 (finding company's officer was

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   sufficiently involved in "decision to place automated calls to render him individually liable

2   under the TCPA"); *Ott*, 65 F. Supp. 3d at 1060–61 (denying individual defendants' motion to

3   dismiss on because they implemented company's telemarketing activity); *Maryland v. Univ.*

4   *Elections*, 787 F. Supp. 2d 408, 415–416 (D. Md. 2011) (denying motion to dismiss individual

5   and finding individuals can be held liable under the TCPA); *Baltimore-Wash. Tele. Co. v. Hot*

6   *Leads Co.*, 584 F. Supp. 2d 736, 745 (D. Md. 2008) (noting individuals can be found personally

7   liable for TCPA violations).

8        Lurie, who owns and operates Triangular Media, was the primary contact with Hearing

9   Help regarding the telemarketing campaign. Paragraph 15 of the FAC specifically alleges that

10  Lurie participated in the illegal telemarketing by "choosing any telemarketing call center that

11  [Triangular Media] might have used" and "personally authorizing the telemarketing conduct of

12  Triangular Media." Although Lurie denies he participated in the telemarketing, the Court must

13  accept Plaintiff's allegations as true. *Cousins,* 568 F.3d at 1067. For the same reasons that the

14  fiduciary shield doctrine does not apply, Plaintiff has sufficiently alleged that Lurie participated

15  in and authorized the unlawful calls at issue in the case. *Naiman v. Blue Raven Solar*, No. 2:19-

16  cv-01643, ECF 41 at 5 (D. Nev. Filed July 2, 2020) (allegations that corporate actors personally

17  authorized or participated in telemarketing conduct by selecting "phone numbers that would

18  be called," "choosing the automated equipment that would be used," "personally loading the

19  lists of numbers and sending the calls at issue," and/or otherwise authorizing the

20  telemarketing conduct, were sufficient to state a claim against an individual corporate actor).

21        2.      Plaintiff alleges that he received more than one spam phone call made with an
                  ATDS during a 12-month period.

22

23        To plead a TCPA claim under section 227(b)(1)(A), Plaintiff must allege (1) the use of

24  automated telephone equipment or an ATDS; (2) to call cellular numbers; (3) absent "prior

25  express consent of the called party." 47 U.S.C. § 227(b)(1)(A). To plead a TCPA claim under

26  section 227(c), Plaintiff must allege he received more than one call to a number on the

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 15
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1 | national Do No Call Registry within twelve months. *See* 47 U.S.C. § 227(c); 47 C.F.R. §

2 | 64.1200(c)(2). The FAC alleges each of these elements.

3 |       Plaintiff alleges that he received at least seven phone calls to his cell phone, which is

4 | listed on the Do Not Call Registry, between May and June 2019. FAC ¶¶ 5, 16, 18, 19. All seven

5 | of the calls leading up to and including the June 13 call that Plaintiff answered came from the

6 | same number: (855) 255-8148. *Id*. ¶¶ 20–21. When Plaintiff called back the (855) 255-8148

7 | number, he reached a recording that stated "The number you have dialed is not in service,"

8 | evidence that the caller ID was "spoofed" (made up), which is characteristic of ATDS *Id*. ¶ 29.

9 | Plaintiff also noted a pause before being connected to the call, which is similarly characteristic

10 | of ATDS. *Id*. ¶ 28. It is undisputed that Plaintiff told Triangular Media he did not want to

11 | receive further automated calls, yet Plaintiff's number was transferred to Hearing Help and he

12 | was called again and again. *Id*. ¶¶ 21-25, ECF 40-1, ECF 40-2. Plaintiff, who has never been a

13 | Hearing Help customer, did not give Defendants permission to call him at any time. *Id*. ¶ 17.

14 | These allegations sufficiently establish Plaintiff's claims under § 227(b) and § 227(c).

15 |       Lurie's claim that neither he nor Triangular Media owned or operated an ATDS system

16 | is unavailing. ECF 52 ¶ 27. It is enough for liability and personal jurisdiction that he contracted

17 | with a third party, including but not limited to Skyscraper, to conduct those calls on his behalf.

18 | *Id*. ¶ 46 (Skyscraper made the June 13, 2019 call to Plaintiff Hoffman which connected him to

19 | Triangular Media's IVR). As the call recipient, Plaintiff does not at this stage have information

20 | about the specific equipment used to dial his number. For this reason, courts find "factual

21 | allegations regarding the nature of messages received to indicate the use of an ATDS" to be

22 | sufficient. *Washington v. Six Continents Hotels, Inc.*, No. 2:16-cv-03719-ODW-JEM, 2018 WL

23 | 4092024, at *4 (C.D. Cal. Aug. 24, 2018) (citing cases, including *Flores v. Adir Int'l, LLC*, 685 F.

24 | App'x 533 (9th Cir. 2017)). Similarly, the Court must accept as true the allegation that Lurie

25 | may be liable under 47 U.S.C. § 217 as a common carrier or user, Lurie's dispute of this

26 | allegation notwithstanding. FAC ¶ 14; ECF 52 ¶¶ 56-57.

27 |

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1     **D.**    **Should the Court Find the Complaint to be deficient, leave to amend is warranted**

2         "If the Court dismisses the complaint or portions thereof, it must consider whether to

3 grant leave to amend." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also Gragg v.*

4 *Orange Cab Co., Inc.*, C12-0576RSL, 2013 WL 195466, at *2 (W.D. Wash. Jan. 17, 2013).

5 Should the Court determine that Plaintiff's allegations are deficient, Plaintiff seeks leave to

6 amend.

7                               **V.  CONCLUSION**

8         Based on the foregoing, Plaintiff requests that the Court deny Lurie's motion to

9 dismiss. As demonstrated above, Lurie has the minimum contacts necessary to comport with

10 due process and hence, the exercise of personal jurisdiction over him is appropriate.

11 Moreover, Plaintiff has pled sufficient facts as to Lurie's personal liability for the alleged

12 conduct to meet the plausibility standard required under Fed. R. Civ. P. 8. Should the Court

13 disagree, Plaintiffs respectfully request the opportunity to engage in jurisdictional discovery

14 and for leave to amend.

15         RESPECTFULLY SUBMITTED AND DATED this 13th day of July, 2020.

16                           TERRELL MARSHALL LAW GROUP PLLC

17

18                     By:  /s/ Adrienne D. McEntee, WSBA #34061
                            Beth E. Terrell, WSBA #26759

19                             Email: bterrell@terrellmarshall.com
                            Jennifer Rust Murray, WSBA #36983

20                             Email: jmurray@terrellmarshall.com
                            Adrienne D. McEntee, WSBA #34061

21                             Email: amcentee@terrellmarshall.com
                            Benjamin M. Drachler, WSBA #51021

22                             Email: bdrachler@terrellmarshall.com
                            936 North 34th Street, Suite 300

23                             Seattle, Washington 98103-8869
                            Telephone: (206) 816-6603

24

25

26

27

Anthony I. Paronich, *Admitted Pro Hac Vice*
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

*Attorneys for Plaintiff and the Proposed Class*

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 18
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1        <u>CERTIFICATE OF SERVICE</u>

2        I, Adrienne D. McEntee, hereby certify that on July 13, 2020, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the following:

5        David E. Crowe, WSBA #43529
6        Email: dcrowe@vkclaw.com
         VAN KAMPEN & CROWE PLLC
7        1001 Fourth Avenue, Suite 4050
         Seattle, Washington 98154
8        Telephone: (206) 386-7353
9        Facsimile: (206) 405-2825

10       Ana Tagvoryan, *Admitted Pro Hac Vice*
11       Email: atagvoryan@blankrome.com
         Nicole Bartz Metral, *Admitted Pro Hac Vice*
12       Email: nbmetral@blankrome.com
         BLANK ROME LLP
13       2029 Century Park East, 6th Floor
         Los Angeles, California 90067
14       Telephone: (424) 239-3400
15       Facsimile: (424) 239-3434

16       Jeffrey Rosenthal, *Admitted Pro Hac Vice*
17       Email: rosenthal-j@blankrome.com
         BLANK ROME LLP
18       130 North 18th Street
         Philadelphia, Pennsylvania 19103
19       Telephone: (215) 569-5500
20       Facsimile: (215) 569-5555

21       *Attorneys for Defendant Hearing Help Express, Inc.*

22       Lewis Lurie
23       Email: lewis92363@gmail.com
         5841 NW 122nd Drive
24       Coral Springs, Florida 33076
         Telephone: (954) 234-8469
25

26       *Defendant, Appearing Pro Se*

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

DATED this 13th day of July, 2020.

2

TERRELL MARSHALL LAW GROUP PLLC

3

By:    /s/ Adrienne D. McEntee, WSBA #34061
Adrienne D. McEntee, WSBA #34061
Email: amcentee@terrellmarshall.com
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

4

5

6

7

8

*Attorneys for Plaintiff and the Proposed Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFF'S RESPONSE TO DEFENDANT LEWIS LURIE'S
MOTION TO DISMISS - 20
CASE NO. 3:19-CV-05960-RBL

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com