1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**


**CASE NO: 3:19-cv-05960-RBL**


**Honorable Ronald B. Leighton**

10
11   MARK HOFFMAN, on behalf of himself
12   and all others similarly situated,
13
14            Plaintiff,
15
16   v.
17
18
19   HEARING HELP EXPRESS, INC.,
20   TRIANGULAR MEDIA CORP., and
21   LEWIS LURIE,
22
23            Defendants.
24

25
26   **DEFENDANT, LEWIS LURIE'S REPLY TO PLAINTIFF'S**
27   **RESPONSE TO DEFENDANT LURIE'S MOTION TO DISMISS**
28

29
30
31        COMES NOW the Defendant, LEWIS LURIE, who is PRO SE and files this Reply to

32   Plaintiff's Response to his Motion to Dismiss, saying the following:

33

34        On June 25, 2020, Mr. Lurie filed a Motion to Dismiss the First Amended Complaint

35   against him [D.E. 52]. On July 13, 2002, Plaintiff filed his Response [D.E. 53]. Now, Mr. Lurie

36   files this Reply to Plaintiff's Response.

37

1

1    As a preliminary matter, Mr. Lurie feels compelled to address some material

2    misrepresentations in Plaintiff's Response and the accompanying Declaration of Plaintiff's

3    counsel. In page 10 of Plaintiff's Response, he writes, "*Triangular Media admits it hired call*

4    *center, Skyscrapers, to originate "prospects" for Hearing Help. ECF 40-1 ¶¶ 9-10. "Triangular*

5    *Media also produced a list of phone numbers Skyscrapers called, for which Triangular Media*

6    *admits there was no consent. McEntee Dec., Exs. 8-9; ECF 40-2 ¶¶ 14-16.*" [D.E. 53 at Page 10].

7    Both statements are <u>false</u> and gross mischaracterizations of what the referenced Exhibits actually

8    say.[1]

9    Mr. Lurie did not call Plaintiff or direct another to. Mr. Lurie did not give Skyscrapers a

10   list of numbers to call. Mr. Lurie does not even know whether Skyscrapers called plaintiff or

11   whether they (or Defendant Hearing Help) utilize an automated telephone dialing system (ATDS).

---

[1] The Exhibits referenced by Plaintiff actually state, verbatim; "*The call from Plaintiff that entered Triangular's IVR technology and created the sole record from Plaintiff was generated by Skyscrapers Private Ltd ("Skyscrapers"). Skyscrapers provided Triangular with a written TCPA policy prior to any dealings and represented to Triangular that only prospects who express an interest in receiving information on more products or services will be transferred to Triangular's technology.*" [D.E. 40-1 ¶¶ 9-10] and "*A review of the recording in which Plaintiff furnished his lead information revealed that Plaintiff did say "yes" to wanting a call back from Hearing Help, but "no" to the separate opt-in at the end of the call. To ascertain the consumer false positive results (by telephone number) tendered to Plaintiff, Triangular Media's software developers (versed on IBM Watson software) ran a data report on all leads that went to Hearing Help in that campaign that passed the filter at a low confidence range. The false positive report parameters were set wide-arc, meaning it was re-run to search ALL false positives whether or not it was due to a garbled, soft or bad connection "yes" response; or an instance where the software simply could have got it wrong and recorded a "yes" when it was a "no" but still pass the filter for telephone calls. Issues related to false positives vary because of particular human voices, background noise (environment or with cellular phone handsets) and carrier call connection quality. Once converted to data, those factors are not accounted for in the data report. It becomes a matter of whether it is a false positive category or not. Triangular Media ran all leads sold to Hearing Help under a wide-arc parameter search for false positive errors and this search yielded 96 total false positive errors. Triangular has since provided record of those false positive results and corresponding telephone numbers (including Plaintiff's number) to Hearing Help and Plaintiff.*" [D.E. 40-2 ¶¶ 14-16]

1   Assuming *arguendo* that Skyscrapers did call the Plaintiff, Mr. Lurie does not know whether

2   Skyscrapers had consent to call him. If anything, based on the written TCPA policy Skyscrapers

3   provided to Defendant Triangular, *plus* the fact that Plaintiff willingly entered Triangular's IVR

4   technology and, Plaintiff in his own voice on a recorded IVR path, willingly provided his personal

5   information (including a name, address, date of birth, email) and said yes to wanting more

6   information from Defendant Hearing Help, it would be improbable to conclude otherwise.

7

8       Contrary to Plaintiff's assertion, the section of the Declaration of Gorgi Gorgiev referenced

9   as ECF 40-2 ¶¶ 14-16 <u>does not</u> admit there was no consent. It references records in which there

10  was an instance "*where the software simply could have got it wrong and recorded a "yes" when

11  it was a "no"*. [D.E. 40-2 ¶¶ 14-16] It merely explains a technology glitch or limitation. And again,

12  this is a technological limitation of an *inbound* IVR path technology, not an outbound call.

13

14      Even if the stretched presumptions in Plaintiff's First Amended Complaint are taken as true

15  (which they are not), Plaintiff's allegations are non-committal as to Mr. Lurie's conduct which

16  "may" or may not be intentional misconduct or gross failure for purposes of personal liability

17  under the TCPA beyond being an agent of a company.  Plaintiff's allegations are insufficient to

18  properly plead a cause of personal liability of an officer or agent under the TCPA.

19

20      The strict liability of the TCPA, if at all, rests on Defendant Triangular Media Corp. unless

21  facts can be articulated to show the Court that Mr. Lurie's personal control or direct conduct

22  constituted misconduct and gross failure.  Then and only then, would Plaintiff have recourse under

23  47 U.S.C. § 217 against Mr. Lurie.  Then and only then, would Plaintiff be able to articulate a

3

1  factual predicate that affords relief under the TCPA against him personally.   Plaintiff's First

2  Amended Complaint fails to do so.

3

4       Even if the allegations are taken as true, the allegations cannot extend to the conduct of Mr.

5  Lurie.  Personal liability requires a showing that the individual "personally authorized the conduct

6  found to have violated the statute". It was not the Congressional intent of 47 U.S.C. § 217 to hold

7  individuals personally liable for conduct outside their control, authority or even knowledge.

8

9       Plaintiff's Response, now and for the first time, alleges that Defendant Triangular's web

10  site "freely admitted" that the company works "with a large network of call centers that generate

11  both data and live transfer leads" and offers "to custom tailor scripts to your specific needs and

12  pre-qualify prospects so that you only speak with individuals who meet the requirements for your

13  specific product or service." McEntee Dec., Exs. 21–22."  [D.E. 53, Pg. 14 lines 17-23] That is

14  another gross mischaracterization.

15

16       Intentionally absent from Plaintiff's Response is the essential fact that Defendant

17  Triangular maintains *inbound* call campaigns and that Hearing Help's campaign was an IVR

18  campaign.[2] Plaintiff acknowledges that his lead was generated through this method. Plaintiff re-

19  transplants information from Triangular Media Corp.'s website about its *inbound* call center

20  business and portrays it now, by innuendo, as outbound for its purposes of long-arm statute

21  considerations.

---

[2] The Eastern District of Washington recently dismissed Springbig, Inc.—a text message platform provider—from a TCPA class action on grounds that the complaint failed to allege that Springbig "was the maker or initiator of the text message," at issue. *Frank v. Cannabis & Glass, LLC*, 2019 U.S. Dist. LEXIS 17081, No. 2:19-cv-00250-SAB (E.D. Wa. Oct. 1, 2019)

1

2      To attempt to discredit Mr. Lurie, Plaintiff references a prior business entity part-owned

3   by Mr. Lurie that was properly dissolved in 2011 and a personal bankruptcy that was discharged

4   in 2014. Articles of Dissolution were filed with the Florida Department of State and the prior

5   business was formally dissolved on December 1, 2011 [D.E. 54-5]. Defendant Triangular Media

6   Corp. was not incorporated until December 19, 2016, more than five (5) years later [D.E. 54-7].

7   The two were completely separate entities. Plaintiff conveniently fails to attach the filings from

8   the Florida Secretary of State during any period of time relevant to the complaint because, they

9   refute Plaintiff's claim. Finally, Mr. Lurie's Chapter 13 had nothing to do with either business and

10  was nonetheless discharged in 2014, more than two (2) years before the incorporation of Defendant

11  Triangular Media Corp. [D.E. 54-6].

12

13     Plaintiff, in support of his Response, also files eight (8) exhibits [D.E. 54 10-15, 18 and

14  19] showing that Mr. Lurie sent invoices for leads to Defendant Hearing Help. The fact that Mr.

15  Lurie handled accounting on behalf of Defendant Triangular and sent invoices to Defendant

16  Hearing Help is in no way indicative that he directed or participated in any calling activity on

17  behalf of any party or had any control over the activity complained of. It also does not demonstrate

18  that he was a "primary participant" or "was the 'guiding spirit' behind the wrongful conduct ... or

19  the 'central figure' in the challenged corporate activity.'" which are required in the Ninth Circuit

20  to find jurisdiction and/or personal liability on the part of corporate officers. *Davis v. Metro. Prod.,*

21  *Inc.*, 885  F.2d at 524 (9th Cir. 1989).

22

5

1    Of the calls Plaintiff alleges to have received and that are at issue in this case, only one (1)

2    was transferred to Defendant Triangular's IVR technology on June 13, 2019. The three calls

3    subsequent to June 13, 2019 were presumably made by Defendant Hearing Help, in good faith and

4    in response to Plaintiff providing his details and requesting information from Hearing Help in

5    Defendant Triangular's IVR. Any calls prior to June 13, 2019 that Plaintiff *alleges* were made by

6    the same party that generated the June 13, 2019 call could have been made on behalf of one of

7    Skyscraper's 400 other clients[3] or campaigns. Nevertheless, none of those calls entered Defendant

8    Triangular's IVR because Defendant Triangular has no such record [D.E 40-2 ¶ 13]. Plaintiff's

9    complaint is devoid of any clear and specific facts or evidence demonstrating otherwise. It is

10   merely speculation.

11

12   A complaint must recite enough factual allegations to raise the plaintiff's claimed right to

13   relief beyond the level of mere speculation. *Ashcroft v. Iqbal*, 556 U.S. 662 and 678, 129 S. Ct.

14   1937, 173 L. Ed. 2d 868 (2009).

15

16   The crux of the allegations against Mr. Lurie in Plaintiff's Amended Complaint is that "*Mr.*

17   *Lurie personally participated in the actions complained of by (a) selecting some of the phone*

18   *numbers that would be called; (b) choosing any telemarketing call center that it might have used;*

19   *and (c) personally authorizing the telemarketing conduct of Triangular Media.*" [Id. ¶ 15].

20   Alleging that these calls were made by or at the direction or authorization of Mr. Lurie or to

21   numbers selected by him is a conclusory allegation and speculation.

22

---

[3] https://www.skyscrapersnow.com

1       As stated above, prior to June 13, 2019, Plaintiff's information or telephone number did

2   not exist in any of the Defendants' universe. Facts alleged in a Complaint must sufficiently state a

3   "plausible" ground for relief. The allegation that Mr. Lurie "selected" plaintiff's number to be

4   called, particularly on any date prior to the date Plaintiff's information existed in Triangular's

5   database is not plausible, neither is it plausible that Mr. Lurie had any control over the alleged

6   conduct of a third party which has hundreds of other clients (which on behalf of those hundreds of

7   other clients it may have placed a call to Plaintiff prior to that date). It is also not plausible that

8   Mr. Lurie had any control over the conduct of Defendant Hearing Help which had been operating

9   for more than thirty (30) years[4] prior to any business relationship between Defendant Hearing Help

10  and Defendant Triangular.

11

12      Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible

13  on its face," the complaint  may  be dismissed  for failure to allege facts sufficient to state a claim

14  upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.

15  1955, 167 L. Ed. 2d 929 (2007); see Fed. R. Civ. P. 12(b)(6).

16

17      Plaintiff's First Amended Complaint makes only broad, general allegations against Mr.

18  Lurie, unsupported by any clear and specific evidence, which are not even facially plausible and

19  which Mr. Lurie and the declarations submitted in this case have specifically refuted. Without

20  more, the fiduciary shield doctrine applies to Mr. Lurie, which states that "a person's mere

21  association with a corporation that causes injury in the forum state is not sufficient in itself to assert

22  jurisdiction over the person." *Davis v. Metro. Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).

---

[4] https://hearinghelpexpress.com/about-us

1

2      For the reasons set forth hereinabove and in Mr. Lurie's Motion to Dismiss, Plaintiff's First

3   Amended Complaint must be stricken, or in the alternative, must be dismissed in its entirety, and

4   with prejudice, pursuant to FRCP. R. 12(b)(2). Dismissal is also warranted under FRCP. R.

5   12(b)(6).

6

7      NOW THEREFORE, Defendant Lewis Lurie respectfully requests this Honorable Court

8   Grant his Motion to Dismiss the First Amended Complaint against him.

9

10   RESPECTFULLY SUBMITTED THIS 16th day of July 2020.

11

12                                                  /s/ Lewis Lurie
13                                                  Lewis Lurie, PRO SE
14                                                  5841 NW 122nd Drive
15                                                  Coral Springs, FL 33076
16                                                  Email: lewis92363@gmail.com
17                                                  Phone: (954) 234-8469
18

1
2                          CERTIFICATE OF SERVICE
3
4          I HEREBY CERTIFY that a true and correct copy of the foregoing was filed this 16th day

5    of July, 2020, with the Clerk of the Court using the CM/ECF system which will send notification

6    to all parties who have requested to be noticed, including:

7

8    TERRELL MARSHALL LAW GROUP              PARONICH LAW, P.C.
9    Beth E. Terrell                         Anthony I. Paronich
10   Jennifer Rust Murray                    350 Lincoln Street, Suite 2400
11   Adrienne D. McEntee                     Hingham, Massachusetts 22043
12   936 North 34th Street, Suite 300        Phone: (617) 485-0018
13   Seattle, Washington 98103-8869          Fax: (503) 318-8100
14   Phone: (206) 816-6603                   Anthony@paronichlaw.com
15   BTerrell@terrellmarshall.com
16   JMurray@terrellmarshall.com             Attorney for Plaintiff
17   AMcentee@terrellmarshall.com
18
19   Attorneys for Plaintiff
20

21
22                                           /s/ Lewis Lurie
23                                           Lewis Lurie, PRO SE
24
25