HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK HOFFMAN, et al.,

                Plaintiffs,

     v.

HEARING HELP EXPRESS INC, et al.,

                Defendants.

CASE NO. C19-5960RBL

ORDER

THIS MATTER is before the Court on the following Motions[1]: Plaintiff Hoffman's Motion to Compel [Dkt. # 37]; Pro se Defendant Lurie's Motion to Dismiss [Dkt. # 52]; Hoffman's responsive Motion for Leave to Conduct Jurisdictional Discovery [Dkt. # 58]; and Hoffman's Motion to File Confidential Documents Under Seal or In Open Court [Dkt. # 55]

       This is a putative class action under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.* Hoffman claims Hearing Help made three unwanted and unauthorized sales calls to his cellular phone, including one with a "pause," indicating the use of an automatic telephone dialing system (ATDS), despite the fact his number is on the national Do Not Call registry and he did not consent to such a call. He seeks to represent two classes of plaintiffs: one

---

[1] Hoffman's recently filed Motion to Amend will be addressed in a later order.

class who received calls directly from Hearing Help (which he calls the "Direct Liability Class") and a second class who received calls from Hearing Help's agent, Triangular Media Corp. (the "Vicarious Liability Class"). Hoffman has since added Triangular and its owner/operator, Lewis Lurie, as Defendants [Dkt. # 45].

Hoffman asks the Court to compel Hearing Help to produce documents (call record details) related to the Direct Liability Class. He seeks records of every call made by Hearing Help since 2015. Hoffman claims that he needs that information to identify calls made using the "Genesys" system like the one used to make the call to him.

Defendant Lurie seeks dismissal of Hoffman's TCPA claims against him, arguing that he is a Florida resident with no Washington contacts. He claims that even if the Court has personal jurisdiction over Triangular, it does not have jurisdiction over him. Indeed, he denies[2] any ownership interest in Triangular.

Hoffman asks for leave to conduct jurisdictional discovery into Lurie's Washington contacts, if the Court determines that he has thus far failed to establish the Court's jurisdiction over Lurie.

Finally, Hoffman has filed documents in response to Lurie's Motion to Dismiss that Hearing Help previously designated as "confidential." Hoffman asks the Court to determine whether Hearing Help has met its burden of demonstrating that these documents should be filed under seal. Hearing Help has not responded.

---

[2] Lurie's Motion [Dkt. # 52] claims that he has no ownership interest in Triangular, and that he submitted an affidavit disavowing any such ownership, but his affidavit [Dkt. # 52-1] does not say that. Hearing Help claims and demonstrates that Lurie founded, owns, is Vice President of, and personally participated in Triangular's work for Hearing Help, which is the subject of this case.

**A.  Hoffman's Motion to Compel.**

Hoffman seeks ten categories of information about all Hearing Help outgoing calls since 2015:

      a.     The date and time each call was placed;

      b.     The number of calls placed;

      c.     The telephone numbers and area codes to which each call was placed;

      d.     For each call, whether it was made via ATDS, predictive dialer, in preview mode, manually, and/or with a prerecorded message or artificial voice;

      e.     The result of each call (e.g., no answer, message left, etc.);

      f.     The content of each call;

      g.     Identifying information for the Person(s) who received the calls (e.g., name, address, email address, etc.) and, if different, Identifying information for the Person(s) to whom the calls were intended to be placed;

      h.     The telephone numbers for all outgoing telephone lines that were used in placing the calls;

      i.     The identity of the companies or carriers that were used to place the automated calls; and

      j.     Any other information regarding the automated calls (e.g., reports, data compilations, verifications, electronic signature records, transmission reports, recordings, etc.).

[Dkt. # 37 at 9-10]

He claims that such information will inform the numerosity, commonality and typicality aspects of his Rule 23 class certification efforts. He points to numerous cases he claims support broad discovery into all calls placed by a TCPA class-action defendant. He argues that Hearing Help's efforts to construct the case in its view is unwarranted, and argues Hearing Help cannot unilaterally decide which discovery is appropriate. Hoffman maintains that he is in the "Direct Liability" class, because Hearing Help called him directly.

Hearing Help opposes the discovery as disproportional, burdensome, and unnecessary. It explains that it purchased leads from now-Defendant Triangular, and denies that it hired

Triangular or any other third party[3] to make calls on its behalf. It claims that Triangular used its

interactive voice response (IVR) system to obtain Hoffman's consent to have Hearing Help call

him, but that Hoffman declined to authorize calls made through an auto dialer. It claims that a

"glitch" in Triangular's IVR recorded the latter response as *yes*, rather than *no*, leading to the

calls to Hoffman. Hearing Help thus argues that only calls it made to leads it obtained from

Triangular are similar to the calls Hoffman received.

It argues that notwithstanding Hoffman's allegations and proposed class definitions, he is

a plaintiff who received a call directly from Hearing Help, based on a lead it purchased from

Triangular. It argues that Hoffman's request for detailed information about every call Hearing

Help placed to anyone for any reason is an improper fishing expedition. It claims it has already

produced almost 16,000 pages in discovery and that it already provided the discoverable

information Hoffman seeks about calls to Triangular leads, like him.

Hearing Help proposes a phased discovery schedule. The first phase would address its

defense that it reasonably relied on Triangular's representation to it that all of the leads it

provided to Hearing Help had expressly consented to contact under the TCPA, and determine

whether Hearing Help is vicariously liable for Triangular's conduct. If it does not prevail on

those defenses, class-wide discovery (including calls placed to names and numbers Hearing Help

obtained from lead-generating vendors other than Triangular[4]) would proceed. It cites a

competing set of cases holding that such phased discovery is appropriate. See, for example,

---

[3] Hoffman's Motion to Amend claims it recently learned that another lead source, Leadcreations.com, was "involved in" the TCPA violations he alleges, and seeks to add it as a defendant. Hoffman suggests that Leadercreations.com is "related to" Triangular. Lurie has apparently told Hoffman that he will oppose the Motion to Amend. Hearing Help does not object.

[4] This offer implicitly concedes that the class could include recipients of calls based on non-Triangular leads, even if that is where Hearing Help got Hoffman's name and number.

ORDER - 4

1    *Terteryan v. Nissan Motor Acceptance Corp.*, No. CV 16-2029-GW (KSx), 2017 U.S. Dist.

2    LEXIS 223118 (C.D. Cal. Oct. 19, 2017). It claims that the request would require someone in its

3    IT department to manually go through the call lists, and that it would take 4-5 months. It argues

4    that retrieving and downloading recordings of calls themselves would take 6000 hours.

5        Hearing Help claims it purchases from vendors like Triangular leads that it believes are

6    legitimate, and makes the calls itself, while Hoffman alleges that it hires third parties like

7    Triangular to make the calls on its behalf. Hoffman claims he needs information about calls

8    using the Genesys system; Hearing Help claims it made all its own calls, and that all of them

9    used Genesys. This is a resolvable factual dispute, which can and should be disposed of before

10    requiring the sort of effort that Hearing Help persuasively argues would be required.

11        Furthermore, at least some of the discovery sought is unnecessary. A plaintiff faced with

12    the unavailability of such evidence (through no fault of the defendant) could successfully argue

13    that the fact he did not have access to it did not preclude class certification, or a verdict. A class

14    action's very nature is the pursuit of representative claims.

15        Hoffman argues that the typicality of the class relates to unauthorized calls by Hearing

16    Help, even if not all leads were generated through the same vendor. He responds to Hearing

17    Help's "burden" argument by offering to pare down the categories of information about each call

18    to those that he persuasively argues are not burdensome. He has withdrawn his request for call

19    recordings. He now seeks only five categories of basic information, which he claims Hearing

20    Help can easily produce without the burden imposed by production of the other categories:

21        (1) the date and time each call was placed,

22        (2) the number of calls placed,

23        (3) the telephone numbers called,

24

(4) the telephone numbers for the outgoing telephone lines used to place calls, and

(5) the identity of the companies or carriers that were used to place automated calls. [RFP # 31 categories (a-c), (h), and (i)].

The Court agrees that as revised, Hoffman's request seeks discoverable information discoerable and that it is not unduly burdensome to produce.

The Motion to Compel [Dkt. # 37] is **GRANTED IN PART**, as to these five categories of calls placed by Hearing Help using leads provided by Triangular and other vendors, or on its own, to prospective customers. Hearing Help need not produce information on calls unrelated to telemarketing.

**B.  Lurie's Motion to Dismiss.**

Lurie argues that the Court has no personal jurisdiction over him, based on his claim that he has no ownership of Triangular and his claim that whatever control he exerted over its activities occurred in Florida. He also argues he is not personally liable for any violation by Triangular.

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the initial burden of demonstrating that jurisdiction is appropriate, after which the burden shifts to the defendant to demonstrate that jurisdiction is unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A prima facie showing means that the plaintiff has produced admissible evidence, which, if believed, is sufficient to establish the

existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

"Conflicts between parties over statements contained in affidavits must be resolved in the

plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800. However, a district court also may order

discovery where "pertinent facts bearing on the question of jurisdiction are controverted or

where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342

F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788

F.2d 535, 540 (9th Cir.1986)).

A court's personal jurisdiction analysis begins with the "long-arm" statute of the state in

which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*., 284 F.3d

1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal

jurisdiction to the broadest reach that the United States Constitution permits, so the jurisdictional

analysis under state law and federal due process are the same. *Byron Nelson Co. v. Orchard

Management Corp*., 95 Wn.App. 462, 465 (1999); *Schwarzenegger*, 374 F.3d at 800–01.

For specific jurisdiction (at issue here), the Ninth Circuit applies a three-prong test.

*Schwarzenegger*, 374 F.3d at 802. First, "[t]he non-resident defendant must purposefully direct

his activities or consummate some transaction with the forum or resident thereof; or perform

some act by which he purposefully avails himself of the privilege of conducting activities in the

forum, thereby invoking the benefits and protections of its laws." *Id*. Second, "the claim must be

one which arises out of or relates to the defendant's forum-related activities." *Id.* Finally, "the

exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be

reasonable." *Id*.

For the first prong, the "purposeful direction" analysis typically applies in tort cases and

"usually consists of evidence of the defendant's actions outside the forum state that are directed

1    at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at

2    803. To determine if the defendant purposefully directed activities at the forum, the Ninth Circuit

3    applies the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the

4    defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum

5    state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

6    *Mavrix Photo, Inc. v. Brand Techs., Inc*., 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Brayton*

7    *Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

8         In cases involving online commerce, the Ninth Circuit has held that simply maintaining a

9    passive website is not enough to satisfy the express aiming prong. Id. at 1229. But "a passive

10   website in conjunction with 'something more'—conduct directly targeting the forum—is

11   sufficient." *Id*. (quoting *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir.

12   2002)). Knowingly taking advantage of the forum state's consumer market, *id*. at 1230, or

13   competing directly with the plaintiff in the forum state may qualify as "something more." *See*

14   *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1077 (9th Cir. 2011).

15        Hoffman argues that a vendor purposefully selling Washington residents' contact

16   information as sales leads has expressly aimed his conduct here. He amply demonstrates that

17   Lurie is an owner and operator (and the Vice President) of Triangular, and plausibly alleges that

18   he personally participated in the calls by choosing the call centers used to generate leads and

19   personally authorized Triangular's conduct. Lurie was Hearing Help's contact at Triangular.

20   [McEntee Decl., Dkt. # 56, and Exhibits thereto]. Lurie acknowledges that Hoffman (or

21   "someone pretending to be Hoffman") called Triangular and participated in its IVR. Hearing

22   Help has met its jurisdictional burden of demonstrating that Lurie purposefully availed himself

23   of the benefits of doing business in Washington by expressly aiming his conduct here.

24

ORDER - 8

Lurie also argues that even so, he is not personally liable for Triangular's conduct and that Hoffman cannot pierce the corporate veil. Hoffman argues persuasively that the fiduciary shield doctrine does not apply where, as here, the individual defendant was the "primary participant" in the alleged wrongdoing. Citing *Calder v. Jones, supra* at 789-90. "Primary participants are those individuals who had 'control of and direct participation in the alleged activities.'" *L&A Designs*, 860 F. Supp. 2d at 1199 (quoting *Wolf Designs*, 322 F. Supp. 2d at 1072).

Lurie's Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. # 52] is **DENIED**.

Hoffman's Motion for Leave to Conduct Jurisdictional Discovery [Dkt. # 58] is **DENIED** as moot.

**C.  Motion to Seal.**

The Court is aware that the Local Rules' mechanism for filing one's adversary's confidential information under seal is cumbersome. Hearing Help designated documents it produced as "confidential," and now Hoffman wants to use those documents in his motions practice. He properly met and conferred, and Hearing Help would not agree to his filing some of the information in open court. He filed the documents under seal, but asks the Court to determine whether they were in fact confidential. He does not argue that they are not confidential, and Hearing Help has not responded to his motion, explaining why they should be confidential.

The "Motion to Seal" is procedurally proper, but it also appears that neither side cares very much about the outcome, making it unnecessary. The Motion [Dkt. # 55] is **GRANTED** and the documents [Dkt. # 57, which are generally invoices from Triangular to Hearing Help, and email communications between them) may be filed in open Court.

\*\*\*

Judge Ronald B. Leighton is retiring from the federal bench at the end of August, 2020. Following resolution of the recently filed Motion to Amend, this case will be TRANSFERRED to a new Judge, and that Court will set a schedule consistent with its own calendar. The Class Certification deadline (September 30) is **STRICKEN**.

IT IS SO ORDERED.

Dated this 12th day of August, 2020.

Ronald B. Leighton
United States District Judge

ORDER - 10