1

Hon. Marsha Pechman

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

7

8
MARK HOFFMAN, on behalf of himself
and all others similarly situated,

9
Plaintiff,

CASE NO.  3:19-cv-05960-RBL

10
v.

**DEFENDANT HEARING HELP**
**EXPRESS, INC.'S OPPOSITION**
**TO PLAINTIFF'S MOTION TO**
**AMEND THE COMPLAINT**

11

12
HEARING HELP EXPRESS, INC.,
TRIANGULAR MEDIA CORP.,
LEADCREATIONS.COM, LLC and
LEWIS LURIE,

13

**ORAL ARGUMENT REQUESTED**

14

15
Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP

113461.00602/124186483v.5

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF FACTS ...................................................................................... 2

    A. Summary of Allegations. ................................................................................ 2

    B. Amendments to Plaintiff's Complaint. ........................................................... 3

    C. Summary of Discovery. .................................................................................. 3

III. AUTHORITY AND ARGUMENT ......................................................................... 3

    A. The Proposed Amendment Is Futile Because Plaintiff Has Not And Cannot
        Establish IntriCon Had The Requisite Control Over HHE's Telemarketing. ....... 4

    B. Plaintiff Is Engaging In Bad Faith. ............................................................... 10

    C. The Proposed Amendment Would Cause Undue Prejudice. ...................... 12

IV. CONCLUSION .................................................................................................... 12

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP

i

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

1

2

**TABLE OF AUTHORITIES**

3

**Page(s)**

4

**Cases**

5

*Anderson v. Domino's Pizza Inc.*,
  2012 WL 1684620 (W.D. Wash. May 15, 2012) ................................................................5

6

7

*Ascon Properties, Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989) ...........................................................................................3

8

*Bowoto v. Chevron Texaco Corp.*,
  312 F. Supp. 2d 1229 (N.D. Cal. 2004) ...........................................................................11

9

*Calvert v. Huckins*,
  875 F. Supp. 674 (E.D. Cal. 1995) ...................................................................................11

10

11

*In re Circuit Breaker Litig.*,
  175 F.R.D. 547 (C.D. Cal. 1997) ......................................................................................10

12

13

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987) ..........................................................................................3, 6

14

15

*E.&J. Gallo Winery v. EnCana Energy Servs., Inc.*,
  2008 WL 2220396 (E.D. Cal. May 27, 2008) ...................................................................11

16

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014) ..............................................................................................4

17

18

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
  847 F. Supp. 2d 1253 (S.D. Cal. 2012) ............................................................................10

19

20

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*,
  2007 WL 2153278 (3d Cir. July 27, 2007) .......................................................................11

21

22

*Kern v. VIP Travel Servs.*,
  2017 WL 1905868 (W.D. Mich. May 10, 2017) .................................................................6

23

*Magness v. Walled Lake Credit Bureau,
  LLC,* 2014 WL 12610218 (E.D. Pa. Jan. 31, 2014) ..........................................................12

24

25

*Mir v. Fosburg*,
  646 F.2d 342 (9th Cir. 1980) ..............................................................................................3

26

27

*Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act*, 2014 WL 223557 (S.D.
  Cal. Jan. 8, 2014) ..............................................................................................................10

28

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP

ii

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

*Sanderina, LLC v. Great Am. Ins. Co.*,
  2018 WL 4355219 (D. Nev. Aug. 27, 2018) ...................................................................4

*Sivilli v. Wright Med. Tech., Inc.*,
  2019 WL 2579794 (S.D. Cal. June 24, 2019).................................................................11

*Thomas v. Taco Bell Corp.*,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012).......................................................4, 5, 8, 11

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998)...........................................................................................................11

*Wilson v. PL Phase One Operations L.P*,
  422 F. Supp. 3d 971 (D. Md. 2019) ...............................................................................10

**Statutes**

47 U.S.C. § 227, *et seq.*....................................................................................................2, 3

**Other Authorities**

FED. R. CIV. P. 15(a)............................................................................................................3

Rule 12(b)(6) .......................................................................................................................4

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                                   iii

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

1

## I.   **INTRODUCTION**

2       Defendant Hearing Help Express, Inc. ("HHE") files this Opposition to Plaintiff Mark

3   Hoffman's ("Plaintiff") *Motion to Amend the Complaint* (the "Motion"). [Dkt. 95]. At its core,

4   this dispute involves allegations that HHE (and/or third parties acting on HHE's behalf) placed

5   unsolicited, automated phone calls to Plaintiff in violation of the Telephone Consumer Protection

6   Act ("TCPA"). After initially filing suit against HHE alone, Plaintiff has subsequently named: (1)

7   Triangular Media Corp. ("Triangular"), a lead generation vendor who sold Plaintiff's information

8   to HHE; (2) Triangular's alleged owner, Lewis Lurie; and (3) an entity allegedly related to

9   Triangular called Leadcreations.Com, LLC ("LeadCreations"). And despite these serial request(s)

10  for leave to amend, HHE did not oppose the amendments. But Plaintiff's instant request for leave

11  is simply a bridge too far; it must be denied.

12      Seemingly displeased with the size and financial resources of the current defendants HHE

13  as well as Triangular/LeadCreations, Plaintiff now turns his attention "upstream" in a thinly-

14  veiled attempt to ensnare HHE's larger, passive parent company. The problem is these passive

15  parent entities—*i.e.*, IntriCon, Inc. and IntriCon Corporation (collectively, "IntriCon")—had

16  absolutely nothing to do with the circumstances leading to this dispute. Despite this lack of proof,

17  Plaintiff contends IntriCon—a publicly traded company with many subsidiaries in its portfolio—

18  is somehow "vicariously liable" for HHE's purported TCPA violations for placing calls to

19  Plaintiff without his consent. As shown, such allegations are baseless and unfounded. Leave to

20  amend is subject to important limitations—including when the proposed amendment is futile, the

21  movant acts in bad faith, and/or it would be unduly prejudicial. All three apply here.

22      First, for IntriCon to be vicariously liable, Plaintiff must demonstrate IntriCon had control

23  over the manner and means of HHE's calling practices. Plaintiff has not done so. And for

24  purposes more relevant to the Motion, the idea of vicarious liability is not supported by any fact

25  discovered in discovery, much less any fact that can make this proposition more probable. Thus,

26  such allegation cannot be supported in good faith in a Complaint. As support, Plaintiff cites

27  incomplete deposition testimony, a single document produced in discovery, and one Securities

28  and Exchange Commission ("SEC") filing. By choosing only specific excerpts and

DEFENDANT'S OPPOSITION TO MOTION
No. 3:19-cv-05960-MJP                 1

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

mischaracterizing the contents of a singular produced document, Plaintiff has misrepresented what discovery has revealed. In reality, there is no evidence IntriCon had any control, much less day-to-day control over HHE's telemarketing efforts. HHE is an independent company with its own officers, managers, and financials. The public parent that purchased HHE out of bankruptcy has no unique involvement and Plaintiff has not shown any. Thus, any amendment is futile.

Second, Plaintiff's amendment is sought in bad faith. This proposed amendment is little more than a blatant attempt to sue a deeper pocket, in an extortionist-like manner. Indeed, Plaintiff's counsel has been asking Intricon to "kick in" for any settlement on behalf of HHE, since the inception of this matter. Plaintiff's bad faith conduct extends to his misrepresentation of the factual record, as well as his willful ignorance of the structure of parent/subsidiary entities and the required financial documents that must be filed by such publicly-traded companies.

Third, the proposed amendment will result in undue prejudice because significant discovery has been conducted in the last year, including seven depositions. IntriCon was not at these depositions and was thus unable to defend itself against baseless vicarious liability theories.

Plaintiff's lack of good faith evidence—coupled with his misrepresentations to the Court regarding what the discovery shows (or suggests)—should not be rewarded with leave to amend his Complaint to add yet another defendant. The Motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Summary of Allegations.

On October 9, 2019, Plaintiff filed his Complaint as a putative class action, which arises from allegations that HHE violated the TCPA, 47 U.S.C. § 227, *et seq.* [Dkt. 1]. Plaintiff contends HHE: (1) placed non-emergency telephone calls using an automatic telephone dialing system ("ATDS") or an artificial/prerecorded voice to his cellular telephone in violation of the TCPA; and (2) placed more than one phone solicitation call within a 12-month period to his cellular telephone number that has been on the Do Not Call ("DNC") registry for at least 31 days in violation the TCPA. Plaintiff's proposed class in the operative complaint consists of four total subclasses: two subclasses as to HHE (*i.e.*, ATDS class and DNC class); and the same two subclasses as to Triangular, Lewis Lurie, and LeadCreations. [Dkt. 72, ¶ 43].

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                                    2

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

### B.     Amendments to Plaintiff's Complaint.

Six months after filing the initial pleading, on June 5, 2020, Plaintiff filed his *First Amended* Complaint adding Triangular and Lewis Lurie as Defendants. [Dkt. 36]. By way of an unopposed motion which was granted, Plaintiff filed his *Second Amended Complaint* on September 11, 2020 adding defendant LeadCreations. [Dkt. Nos. 63 and 72.]

### C.     Summary of Discovery.

Plaintiff first served written discovery against HHE in January of 2020. *See* Declaration of Jeffrey Rosenthal filed concurrently ("<u>Rosenthal Dec.</u>"), ¶ 2. HHE served written discovery responses, supplemental discovery responses, and over 19,000 pages of documents. *Id.* Plaintiff recently served a second set of documents requests to HHE, to which HHE has responded. *Id.* Discovery continued with HHE serving written discovery in July of 2020 and several depositions taking place. *Id.* at ¶ 3. On July 30, 2020, Plaintiff took the corporate deposition of HHE, in which two individuals testified. *Id.* Plaintiff also deposed three former HHE employees on August 26, 2020, August 28, 2020, and September 23, 2020. *Id.* at ¶ 3. Next, HHE deposed Plaintiff on November 4, 2020 and Plaintiff, in turn, deposed Defendant Lewis Lurie on November 19, 2020. *Id.* at ¶¶ 5-6. Plaintiff has also served two third-party subpoenas, one to IntriCon. *Id.* at ¶ 7. IntriCon produced 85 pages of documents in response thereto. *Id.*

### III.     <u>AUTHORITY AND ARGUMENT</u>

Under Federal Rule 15(a), a party may amend a pleading only with the opposing's party's written consent or leave from court. FED. R. CIV. P. 15(a). Leave should be granted only when justice so requires. *Id.* In fact, the liberality in granting leave is subject to several limitations. For instance, leave should not be granted "where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Courts have broad discretion to deny leave where a plaintiff has previously amended the complaint. *Id.* (citing *DCD Programs*, 833 F.2d at 186 n.3; *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980)).

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                                    3

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

**A.**     **The Proposed Amendment Is Futile Because Plaintiff Has Not And Cannot Establish IntriCon Had The Requisite Control Over HHE's Telemarketing.**

A court may deny leave to amend if the amendment is futile. A proposed amendment is futile if it does not state sufficient facts and could not withstand a Rule 12(b)(6) motion for failure to state a claim. *Sanderina, LLC v. Great Am. Ins. Co.*, 2018 WL 4355219, at *1 (D. Nev. Aug. 27, 2018). Here, Plaintiff contends that HHE is the agent of IntriCon and that when a general agency relationship is established, one party can be vicariously liable for another's TCPA violation. Mot., 5:17-21. And while this may be a correct statement, the cases Plaintiff cites either offer no support or, at times, are contrary to his position.

For instance, *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), involved a company hiring a third-party vendor to send unsolicited text messages on behalf of another company. *Id.* at 873. It did *not* involve a parent company being liable for the actions of a subsidiary. The case does, however, state "a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, *between the defendant <u>and a third-party caller</u>*." *Id.* at 879 (emphasis added). *Gomez* is thus distinguishable whereby here, Plaintiff tries to attach agency liability to a passive parent entity— not a defendant who hired a third-party caller. Rather, to impose vicarious TCPA liability on a parent, Plaintiff must show IntriCon "controlled the manner and means" by which HHE made the illegal calls. This "manner and means" standard comes from *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1081 (C.D. Cal. 2012),—on which Plaintiff relies. But *Thomas*—which *refused* to impose vicarious liability on a passive parent—supports HHE.

In *Thomas*, plaintiff asserted TCPA violations against Taco Bell Corp. for a marketing campaign conducted by a local Taco Bell advertising company. *Id.* at 1081. And even though the plaintiff argued Taco Bell Corp. approved and released funds for the texting campaign, the court held the parent franchisor was *not* liable for the franchisee's and third-party advertiser's actions as this was insufficient evidence of "control" over the "manner and means" of sending the texts. *Id.* at 1085. The court also rejected plaintiff's "purse-strings" theory based on the entities being unable to employ the campaign without Taco Bell Corp.'s approval and funding. And the court

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                                          4

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

1  further held there was no evidence: (a) the advertising company (and the additional downstream

2  third-party vendors it hired) had acted as an agent of Taco Bell Corp.; (b) that Taco Bell Corp.

3  had the right to control them; or (c) that Taco Bell Corp. controlled the manner and means of the

4  actual text campaign the entities conducted. *Id*. at 1084-85. The court also rejected the contention

5  that an agency relationship is created merely by owning most of another corporation's stock. *Id*.

6  at 1086. Nor did an email chain with Taco Bell Corp.'s advertising compliance analyst about the

7  texting campaign establish Taco Bell Corp. directed and supervised the creation/sending of the

8  texts for the franchisee. *Id*. Simply put, the Ninth Circuit in *Thomas* recognized that simply

9  because a parent company had knowledge, approved, and/or provided the funds for a given

10  marketing campaign, that fact alone falls short of establishing vicarious liability. *Id*. at 1086.

11       Here, as in *Thomas*, Plaintiff has similarly failed to make a *prima facie* showing of

12  IntriCon's control or knowledge of the "manner and means" of HHE's outbound calls to Plaintiff

13  or the proposed class members, much less that Intricon knew HHE was hiring third party lead

14  providers. Plaintiff's conclusory claims that IntriCon had the "ability to control the operations of

15  HHE," and that "[IntriCon] bears the largest risk and reward of its financial results," are

16  insufficient to impose liability on IntriCon. Exh. B to Mot. ¶ 49.  *Anderson v. Domino's Pizza*

17  *Inc.,* 2012 WL 1684620, at *4 (W.D. Wash. May 15, 2012) (TCPA case finding the following

18  was insufficient for a finding of vicarious liability on a franchising entity: parent company

19  requiring software to be used that could produce a list of customers for automatic dialing;

20  requiring franchisees to participate in marketing campaigns; and the fact that it franchising

21  company benefited from calls).  Even less is alleged here.  In fact, Paragraphs 43-49 in the

22  proposed *Third Amended Complaint* are the *only* allegations that even addresses IntriCon's

23  purported control over HHE and they have nothing specific to do with HHE's telemarketing to

24  Plaintiff or the other proposed class members. In support of IntriCon's alleged control, Plaintiff

25  mischaracterizes and quotes an irrelevant statement from a 2017 filing IntriCon made with the

26  SEC. The actual portions quoted are: "IntriCon intends to focus more capital and resources in

27  marketing and sales to expand its reach into the emerging value based hearing healthcare market"

28  and "[a]s a result of the investment in Hearing Help Express in 2016, the Company began

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                              5

113461.00602/124186483v.5

1  marketing and selling hearing aid devices directly to consumers through direct mail advertising,

2  internet and a call center."

3      First, HHE did not even use outbound calling until the end of 2017 or early 2018

4  (Declaration of Adrienne D. McEntee filed with Motion as Dkt. 96 ("McEntee Dec.") at Exh. 2,

5  27:2-5)—so a statement from 2017 has no bearing on this case. The SEC filing mentions "call

6  center", but this term is generic and does not address IntriCon's control over *telemarketing calls*

7  or HHE's use of an ATDS. Second, "IntriCon" is defined as including all of its subsidiaries so

8  this single statement is not solely attributable to IntriCon and Plaintiff has not shown that it is.

9      Plaintiff then uses this same statement from the SEC filing to allege "[d]espite IntriCon's

10  ability to control Hearing Help's operations, and its manifestation of that control as described

11  above, IntriCon did nothing to ensure that the telemarketing calls designed to benefit IntriCon's

12  bottom line complied with telemarketing laws." Exh. B to Mot. ¶ 50. Plaintiff's broad-sweeping,

13  conclusory allegations as to what Intricon should have done are insufficient to uphold allegations

14  against IntriCon in the proposed amendment. *Kern v. VIP Travel Servs.*, 2017 WL 1905868, at *8

15  (W.D. Mich. May 10, 2017) (TCPA case denying leave to amend to add a parent entity, finding

16  conclusory allegations of a parent recklessly disregarding a risk of TCPA violations is

17  insufficient, and sufficient knowledge of unlawful calls leading a reasonable person to investigate

18  must be alleged). This is especially true given that this is not an initial pleading, but rather, the

19  *third* amendment. Plaintiff has had the benefit of almost a year of discovery, including written

20  discovery, several depositions, and a document subpoena to IntriCon. Even after all of the

21  discovery, this is the best evidence Plaintiff has strewn together, yet it is still insufficient to attach

22  liability to IntriCon. The Court may look at whether a plaintiff previously amended his complaint

23  in deciding whether to grant leave and it is clear, leave to amend should not be granted here.

24  *Leighton*, *supra*, 833 F.3d at 186-87 & n. 3.

25      Plaintiff's remaining "evidence" consists of cherry-picked portions of deposition

26  testimony and one four-page confidential document produced by IntriCon in response to a

27  subpoena. As shown, neither this testimony nor the document suggests IntriCon had knowledge

28  or control over the "tactics" or "operation" of HHE's telemarketing practices. Each of Plaintiff's

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                    6

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

113461.00602/124186483v.5

six supporting examples of alleged control are addressed below. Whether viewed individually or collectively, such evidence is insufficient.

> **(1)** *Plaintiff claims HHE's former CEO, Mr. James Houlihan, reported directly to IntriCon's CEO, and that Mr. Houlihan testified IntriCon had the right to "manage" HHE's operations*. Mot., 2:25-26 and 6:6-7.

General testimony about reporting to the parent company and/or the parent's ability to manage an independent subsidiary's operations do not rise to a *prima facie* showing of probable facts supportive of vicarious liability under the TCPA. What is more, Plaintiff purposely omitted other portions of Mr. Houlihan's transcript clearly establishing IntriCon did *not* control the manner and means of the telemarketing efforts. In this regard, on redirect Mr. Houlihan was specifically asked by his counsel:

> **Q.** Does IntriCon manage the day-to-day operations of Hearing Help?
> **A.** No.
> **Q.** Does IntriCon manage the outbound calls that Hearing Help makes?
> **A.** No.
> **Q.** Does IntriCon manage the selection of lead generation companies, what you called affiliates, that Hearing Help works with?
> **A.** No.
> **Q.** Does IntriCon review the leads that Hearing Help purchases?
> **A.** No.
> **Q.** Does IntriCon approve the type of marketing that's undertaken by Hearing Help?
> **A.** No.

Rosenthal Dec. at Exh. 1 (transcript from Deposition of James Houlihan) at 152:7-11; 152:12-153:7. Mr. Houlihan was then asked: "Would IntriCon be aware of the type of day-to-day marketing of Hearing Help" to which he responded: "Not so much the day-to-day but general strategy, high-level strategy." *Id*. at 153:8-11. Plaintiff conveniently omitted all of this testimony. In addition, HHE's Affiliate Program Manager, who was responsible for hiring and finding lead generation vendors, also testified she had no discussions with IntriCon regarding hiring vendors. Rosenthal Dec. at Exh. 2 (transcript from Deposition of Sophie Cormier at 13:10-14:11, 18:6-19:8, and 66:22-67:23). IntriCon also did not approve payments to telesales/lead generation vendors. McEntee Dec. at Exh. 2, 60:14-16.

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                    7

113461.00602/124186483v.5

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

**(2)** *HHE needed IntriCon's permission to purchase 20-30 computers as it expanded employees, including those who would use the auto-dialing system.* Mot., 6:7-9.

As discussed, "[t]he fact that a parent corporation finances the operations of a subsidiary is not sufficient to support a finding that the subsidiary is a mere agent or instrumentality of the parent." *Thomas*, 879 F. Supp. 2d at 1085. Whether IntriCon approved a computer purchase does not establish IntriCon controlled the day-to-day tactics and operation of the use of the purported "auto-dialing system."[1] Plaintiff also incorrectly summarizes the testimony regarding this computer purchase. The deponent was asked: "Was the purchase of that computer equipment in conjunction with expanding the telesales aspect of the marketing division?" to which he responded, "I can't say that that was specific to telemarketing. It was definitely expanding the number of employees." McEntee Dec. at Exh. 2, 60:8-13.

**(3)** *One former employee's testimony that IntriCon personnel visited HHE's premises for monthly meetings to set forth expectations IntriCon had for HHE.* Mot., 6:9-11.

Testimony about IntriCon's meetings with HHE came from a former HHE employee, Mr. Justin Moser. Mr. Moser testified he interacted with IntriCon personnel towards the ends of 2019 when he and other managers of HHE met with someone from IntriCon. McEntee Dec. at Exh. 3, 31:23-32:20. He also testified he did not recall what occurred at those meetings. *Id.* at 32:21-33:1. Mr. Moser's other testimony regarding monthly meetings between HHE and IntriCon is pure hearsay; he specifically testified he was *never in those other meetings* and only heard updates from Mr. Houlihan on IntriCon's expectations. *Id.* at 33:19-34:7. Setting the hearsay aside, IntriCon's purportedly relayed expectations were about rolling out a new product to sell and to not spend too much money—nothing about outbound telemarketing. *Id.* at 34:8-37:51.

**(4)** *IntriCon required HHE to produce cash flow reports, monthly profits, loss reports, and balance sheets.* Mot. at 6:11-13.

Though addressed further below, the production of financial reports of a subsidiary to a parent company is commonplace and does not establish these reports had anything to do with

---

[1] The "auto-dialing system" is merely a cloud-based telephone system used for all of HHE's business calls, and not just outbound telemarketing. McEntee Dec. at Exh. 2, 59-60:2; Declaration of Richard Calligan [Dkt. 42], ¶ 6.

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                    8

IntriCon's control over HHE's telemarketing sales efforts—indeed, some of these reports were required for IntriCon's auditors.[2]  McEntee Dec., Exh. 2, 30:22-25.

(5)  *IntriCon consolidated HHE's financials with its own.* Mot. at 6:13-14.

The idea of consolidated financials is not supported by any evidence. The only basis in support of this conclusory statement is the one SEC filing which discusses consolidated financial statements generally– not that all of HHE's financials were consolidated with IntriCon in their entirety. In fact, HHE prepared its own financial and accounting reports. McEntee Dec. at Exh. 2, 30:16-36:16. HHE is a separate entity that issues W-2 to employees. Rosenthal Dec., Exh. 1, 12:15-17.

(6)  *IntriCon used HHE and its call centers as a platform to increase IntriCon's presence and demand in the hearing aid market, and internal notes confirm that IntriCon used HHE's call center to leverage and capitalize on IntriCon's existing capabilities and predicted the demand for baby boomers would increase.* Mot. at 6:14-15 and Exh. 4 to McEntee Dec. filed under seal.

Once the Court reviews the filed document under seal (which is the four-page document IntriCon produced), it will become clear the internal notes mention a "call center"—but not a *telemarketing* call center or anything about calls being made via an auto-dialer to boost sales. The call center is one of many operational functions of HHE mentioned on the document, and Plaintiff has no corroborating evidence of any kind that the "call center" refers to anything more than a customer service call center. Moreover, HHE's "call center" handled all types of calls including inbound and customer service calls. Rosenthal Dec., at Exh. 2, 85:21-87:7.

Plaintiff also contends that "IntriCon did nothing to ensure that the telemarketing calls designed to benefit IntriCon's bottom line complied with telemarketing laws." Exh. B to Mot. ¶ 50. Given Plaintiff's complete lack of evidence of IntriCon's knowledge or control, this allegation is irrelevant. IntriCon has no independent duty to investigate and the TCPA does not afford liability to passive parents. Plaintiff attempted to obtain the necessary evidence to support his frivolous theory through deposition testimony and documents produced—yet was unable to do so, and therefore, the amendment is futile.

---

[2] Moreover, the production of financial reports to a parent entity is necessary to enable the parent to prepare consolidated financial statements in accordance with SEC and GAAP requirements.

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                                    9

113461.00602/124186483v.5

**VAN KAMPEN & CROWE** PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    Plaintiff also claims that HHE had "IntriCon's authorization to engage in telemarketing

2    that would increase company profits, no matter the tactics used." Mot., 6:18-23. But this

3    conclusory claim has no support in any of the evidence presented by Plaintiff—indeed, this

4    statement is so unfounded that IntriCon may very well use it to assert malicious prosecution

5    claims against Plaintiff and counsel. Turning to the legal support offered by Plaintiff, they are

6    inapposite. The first, *Wilson v. PL Phase One Operations L.P*, is out of Circuit and otherwise

7    distinguishable because there, the company employing the marketing campaign was directly hired

8    by the parent entity who developed policies and procedures for a telemarketing text messaging

9    campaign; collected the list of numbers to use in the telemarking campaign; and the parent entity

10   gave final approval over marketing. 422 F. Supp. 3d 971, 980-81 (D. Md. 2019). No such parent

11   involvement exists here.[3]

12    Lastly, while *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig*. did

13   involve vicarious liability of a parent company for TCPA violations, that case included

14   allegations the parent was directly involved in the TCPA violations; that the parent's employees

15   and agents had direct and personal participation in the TCPA violations; and that personnel of the

16   parent were involved in the operation of the call centers. 2014 WL 223557, at *2-3 (S.D. Cal. Jan.

17   8, 2014). No such allegations of direct liability can be found in the proposed amendment.

18       **B.      Plaintiff Is Engaging In Bad Faith.**

19    Given the lack of evidence against IntriCon, coupled with Plaintiff's interest (and

20   sometimes insistence) in having IntriCon fund a settlement on behalf of HHE, the logical

21   conclusion is the instant request for leave is designed to harass HHE and gain access to a potential

22   deeper pocket. A party cannot seek to amend claims, which it cannot support in good faith. *In re*

23   *Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997).

24    Here, Plaintiff clearly feigns ignorance of how public companies operate. Everything

25   Plaintiff describes about the purchase of HHE's assets, the consolidation of financials, and

26

27   _____

[3] *In re Jiffy Lube Int'l, Inc., Text Spam Litig*. also did not involve a parent entity, and instead, the question
28   presented was whether a franchisee of Jiffy Lube could be held vicariously liable for the acts of the vendor
     it had hired. 847 F. Supp. 2d 1253, 1256-57 (S.D. Cal. 2012).

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                10

113461.00602/124186483v.5

1    financial reporting are normal and expected for any entity with a parent company. Such

2    allegations do not and cannot automatically establish liability of a parent company for the acts of

3    its subsidiary. Indeed, it is "[o]nly in unusual circumstances will the law permit a parent

4    corporation to be held either directly or indirectly liable for the acts of its subsidiary." *See E.&J.*

5    *Gallo Winery v. EnCana Energy Servs., Inc.*, 2008 WL 2220396, at *5 (E.D. Cal. May 27, 2008)

6    (quoting *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal. 2004)). "It is a

7    general principle of corporate law deeply 'ingrained in our economic and legal systems' that a

8    parent corporation . . . is not liable for the acts of its subsidiaries" unless a parent company

9    directly participates in the conduct, directs the conduct, or the wrong can be traced to the parent

10   company. *U.S. v. Bestfoods*, 524 U.S. 51, 61 and 64-65 (1998). In fact, "[t]he independence of a

11   subsidiary from [its] parent corporation *is to be presumed*." *E.&J. Gallo Winery*, 2008 WL

12   2220396, at *5 (emphasis added).

13        Filing of consolidated SEC forms does not establish anything—as the SEC *requires*

14   companies to file consolidated forms. *Sivilli v. Wright Med. Tech., Inc.*, 2019 WL 2579794, at *4

15   (S.D. Cal. June 24, 2019). In fact, "case law in the Ninth Circuit is clear in stating that

16   'consolidating the activities of a subsidiary into the [parent company's] reports is a common

17   business practice,' [citations omitted] and 'is allowed by both the Internal Revenue Service and

18   the Securities and Exchange Commission.' " *Id.*; citing *Calvert v. Huckins*, 875 F. Supp. 674, 678

19   (E.D. Cal. 1995). More importantly, an SEC filing regarding filed financial statements is

20   insufficient to establish control for purposes of liability. As shown above, a parent company can

21   only be vicariously liable under the TCPA if it had the manner and means to control *and did*

22   *control* the actual telemarketing campaigns. *Thomas*, 879 F. Supp. 2d 1079 at 1086.

23   "[K]nowledge, approval, and fund administration do not amount to controlling the manner and

24   means." *Id*. Try as he might, Plaintiff simply cannot support his burden for leave to amend. [4]

25

26   _____

[4] The evidence clearly demonstrates HHE was acting on its own behalf and in control of its own specific

27   day-to-day operations. Even if there were activity by HHE on behalf of IntriCon, Plaintiff has not

     demonstrated that such activity related to outbound sales calls directly for IntriCon's benefit. *Jurimex*

28   *Kommerz Transit G.M.B.H. v. Case Corp.*, 2007 WL 2153278, at *2 (3d Cir. July 27, 2007) (testimony of

     parent's general interest in a transaction and that employees of a subsidiary had sufficient authority under

VAN KAMPEN & CROWE PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.      **The Proposed Amendment Would Cause Undue Prejudice.**

Plaintiff argues the proposed amendments will not cause prejudice because amendments have been granted in cases further along; the deadline to add parties has not passed; adding IntriCon will not delay the current deadlines; and IntriCon is represented by the same counsel as HHE. Mot., 5:4-15. None of these arguments are persuasive. Although the deadline to amend pleadings and add parties has not passed, the parties are far into discovery. Seven individuals have been deposed so far, including Plaintiff. That the same counsel may represent IntriCon should it be added as a party does not support Plaintiff's lack of prejudice argument. IntriCon was not involved in these depositions and would need to re-depose each of them to ask specific questions debunking Plaintiff's wild theories of IntriCon's vicarious liability. Discovery so far has been based on Plaintiff's prior complaints and it would be prejudicial for the parties to bear burden, time, and expense of engaging in repetitive discovery. *Magness v. Walled Lake Credit Bureau*, LLC, 2014 WL 12610218, at *3 (E.D. Pa. Jan. 31, 2014) (court denied leave to add a parent and TCPA claims finding prejudice to the new and former parties, plaintiff knew identity of the parent company since the initial disclosures were filed yet failed to diligently determine the parent's involvement, and waiting three months to file a motion was an undue delay).

Moreover, there are several motions pending before the Court, including a discovery motion (Motion for Protective Order) regarding the scope of class discovery. [Dkt. 79.] Adding IntriCon as a new defendant would further complicate and dramatically expand the scope of what is already an unnecessarily complex case.  The Court has discretion to control its docket and may look to the efficiencies afford to the parties, especially in a case where the Plaintiff has testified as to not knowing or understanding IntriCon's involvement, and also testifying that none of the calls he alleged were placed by Triangular or LeadCreations mentioned IntriCon, and that none of the calls placed by HHE mentioned IntriCon. *Id.* at 106:17-22 and 106:23-12.

## IV.      <u>CONCLUSION</u>

Hearing Help requests the Motion, which is the third request to amend, be denied.

---

delegation to act on the parent's behalf generally is insufficient to establish an agency relationship because there must be evidence of agency relationship specific to the transaction which alleged liability arises).

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP                                    12

113461.00602/124186483v.5

1

DATED this 14th day of December, 2020.

2

3

VAN KAMPEN & CROWE PLLC

4

/s/ David E. Crowe
David E. Crowe, WSBA No. 43529

5

dcrowe@vkclaw.com

6

BLANK ROME LLP

7

/s/ Nicole B. Metral

8

Ana Tagvoryan (admitted *pro hac vice*)
atagvoryan@BlankRome.com

9

Jeffrey Rosenthal (admitted *pro hac vice*)
Rosenthal-J@BlankRome.com

10

Nicole B. Metral (admitted *pro hac vice*)
nbmetral@blankrome.com

11

2029 Century Park East, 6th Floor
Los Angeles, CA  90067

12

Telephone:    424.239.3400
Facsimile:    424.239.3434

13

14

*Attorneys for Defendant Hearing Help Express, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP

13

113461.00602/124186483v.5

1

**CERTIFICATE OF SERVICE**

2

I, Nicole Metral, hereby certify that on December 14th, 2020, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the following

5

| | |
|---|---|
| TERRELL MARSHALL LAW GROUP | PARONICH LAW, P.C. |
| Beth E. Terrell | Anthony I. Paronich |
| Jennifer Rust Murray | 350 Lincoln Street, Suite 2400 |
| Adrienne D. McEntee | Hingham, Massachusetts 22043 |
| 936 North 34th Street, Suite 300 | Phone: (617) 485-0018 |
| Seattle, Washington 98103-8869 | Fax: (503) 318-8100 |
| Phone: (206) 816-6603 | Anthony@paronichlaw.com |
| BTerrell@terrellmarshall.com | |
| JMurray@terrellmarshall.com | Attorney for Plaintiff |
| AMcentee@terrellmarshall.com | |

6

7

8

9

10

11

Attorneys for Plaintiff

12

Carl J. Marquardt
LAW OFFICE OF

13

CARL J. MARQUARDT, PLLC
1126 34th Avenue, Suite 311

14

Seattle, Washington 98122-5137

15

Telephone: (206) 388-4498
carl@cjmpllc.com

16

17

Attorney for Defendant Lewis Lurie and
Defendant LeadCreations.Com, LLC

18

Edward Maldonado, Admitted Pro Hac Vice

19

MALDONADO LAW GROUP
2850 S. Douglas Road, Suite 303

20

Coral Gables, Florida 33134
Telephone: (305) 477-7580

21

eam@maldonado-group.com

22

awclerk@maldonado-group.com

23

Attorney for Defendant Lewis Lurie and
Defendant LeadCreations.Com, LLC

24

25

Signed at Los Angeles, California this 14th day of December 2020.

26

*/s/ Nicole Metral*

27

Nicole Metral

28

OPPOSITION TO MOTION FOR LEAVE
No. 3:19-cv-05960-MJP

113461.00602/124186483v.5