UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK HOFFMAN,<br><br>                Plaintiff,<br><br>    v.<br><br>HEARING HELP EXPRESS INC, et al.<br><br>                Defendants. | CASE NO. C19-5960 MJP<br><br>ORDER ON MOTION FOR PROTECTIVE ORDER AND MOTION TO STRIKE |

       This matter comes before the Court on Defendant Hearing Help Express Inc's Motion for Protective Order (Dkt. No. 79) and Plaintiff's Motion to Strike Hearing Help's Fourteenth Affirmative Defense (Dkt. No. 89). Having considered the Motions, the Responses (Dkt. Nos. 85, 92), the Replies (Dkt. Nos. 87, 93), and all supporting materials the Court GRANTS in part and DENIES in part the Motion for Protective Order and GRANTS the Motion to Strike.

# BACKGROUND

## A. General Background

Plaintiff brings a proposed class action alleging that Hearing Help, Triangular Media, and LeadCreations.com violated the Telephone Consumer Protection Act by placing unwanted calls to his cell phone. Plaintiff seeks to represent two classes of persons: (1) one class that received unwanted calls from or on behalf of Hearing Help ("Direct Liability Class") and (2) another class who received calls from Triangular or LeadCreations.com ("Vicarious Liability Class").

Hearing Help is a company that sells hearing aids to individuals through telemarketing. Hearing Help purchases leads from various entities, one of which is Triangular Media. Another such entity is ByteSuccess. In all, there appear to be eleven different vendors from whom Hearing Help purchased leads during the time frame at issue. (Declaration of Richard Calligan ¶ 11 (Dkt. No. 81).) Plaintiff received calls to his cell phone from Hearing Help and from Triangular Media that he claims he did not consent to receive. Hearing Help claims that it called Plaintiff after it obtained the lead from Triangular Media and relied on Triangular Media to have obtained consent from Plaintiff. But Plaintiff did not consent. Hearing Help claims a "glitch" made it appear that Plaintiff had consented, when he had not.

## B. Background Related to Motion for Protective Order

Hearing Help seeks a protective order precluding Plaintiff from obtaining: (1) evidence in Hearing Help's possession showing that it obtained consent to call individuals that may be in the Direct Liability Class; and (2) evidence from a third-party lead generator called ByteSuccess to whom Plaintiff sent a subpoena for materials that Plaintiff now limits to the issue of consent.

First, Hearing Help's Motion asserts that Plaintiff's Request for Production 39 is overbroad, unduly burdensome, and not proportional to the needs of the case. Request for

Production 39 asks for "[d]ocuments sufficient to show that You [Hearing Help] or a third party placing calls selling Your services had prior written consent to place the calls set forth in the calling data. . . ." (Dkt. No. 80 at 57.) This information is relevant to Hearing Help's affirmative defense that it had evidence of consent before contacting Plaintiff and to arguments against class certification. (Answer at First and Twenty-Third Affirmative Defenses. (Dkt. No. 82 at 19 and 24).)

According to Hearing Help, responding to this request would require finding evidence of consent as to call leads obtained from vendors other than Triangular, which would total around 344,000 phone numbers. (Calligan Decl. ¶ 11.) Hearing Help does not claim that it would be burdensome to show consent as to the Triangular-sourced leads (22,000 in all). (Id. ¶ 9.) But Hearing Help's IT manager claims he is the only person available to respond to the discovery request and it would take him "several weeks of time, or even months solely dedicated to this task" that he does not believe he can automate. (Id. ¶ 11.)

Second, Hearing Help seeks to quash a subpoena that Plaintiff issued to a third-party lead generator called ByteSuccess who sold leads to Hearing Help. Plaintiff has now agreed to limit the subpoena to the issue of "prior express written consent." (Pl. Response at 9 (Dkt. No. 85 at 13); McEntee Decl. ¶ 5 (Dkt. No 86).) Plaintiff has not identified the specific requests in the subpoena that it wishes to pursue, but the Court concludes that Plaintiff has limited the subpoena to Requests 4 and 5 in the Subpoena. ByteSuccess has not appeared to contest the subpoena.

**C.     Background Relevant to Motion to Strike**

Plaintiff's Motion to Strike attacks Hearing Help's fourteenth affirmative defense, which generally asserts a good faith and reasonableness defense. The defense states:

> Defendant at all times acted in good faith and within reasonable commercial standards as to the matters alleged in the SAC. Moreover, Defendant acted in good faith and

       reasonably relied on Triangular/LeadCreations, and any other lead generation vendor in their compliance with the TCPA in generating leads sold to Defendant. Triangular/LeadCreations, and all other lead generation vendors were to only provide leads to Defendant who provided express consent to be called. Triangular/LeadCreations and all other lead generation vendors provided assurances to Defendant that all leads transmitted to Hearing Help had given their express consent to be contacted by Defendant. Defendant reasonably believed only leads who provided consent to be called would be transmitted from Triangular/LeadCreations and the third-party lead generation vendors.

(Hearing Help Answer to Second Amended Complaint (Dkt. No. 82).)

## ANALYSIS

**A.    Motion for Protective Order**

    **1.    Legal Standard**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The Court may issue a protective order for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" See Fed. R. Civ. P. 26(c)(1)(f). "[G]ood cause" exists when "a specific prejudice or harm" will result absent entry of a protective order. Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). Unsubstantiated allegations of harm and burden will not suffice. Id.

    **2.    The Request for Production Seeks Relevant Information**

Hearing Help argues that the evidence of class-wide consent is irrelevant to Plaintiff's claims because they concern leads obtained from vendors other than Triangular. This argument lacks merit because it misreads and mischaracterizes the claims.

ORDER ON MOTION FOR PROTECTIVE ORDER AND MOTION TO STRIKE - 4

1    Hearing Help incorrectly claims Plaintiff's proposed Direct Liability Class excludes
2 anyone who was not called from a lead generated by Triangular. But the alleged class includes
3 "All persons or entities within the United States who received, on or after October 9, 2015, a
4 non-emergency telephone call from or on behalf of Hearing Help Express, Inc." (Second
5 Amended Complaint ¶ 42 (Class 2) (Dkt. No. 45).) The proposed class is not defined by who
6 generated the lead. The only issue is whether Hearing Help or its agent made the call—regardless
7 of the lead source.

8    Because the proposed class includes everyone Hearing Help called regardless of vendor
9 source, the issue of consent as to the whole class is relevant. Hearing Help acknowledges as
10 much, stating: "[w]hether consent will be or is an individualized issue (it is). . . ." (Reply at 4
11 (Dkt. No. 87 at 5) (emphasis added).) Hearing Help thus concedes that consent is an
12 individualized issue relevant to class certification. Plaintiff is therefore entitled to develop
13 evidence on this issue to support his class claims and to prepare for class certification.

14   **3.    Proportionality**

15   Hearing Help argues that the request for consent information is not proportional to the
16 needs of the case because it would be unduly burdensome for it to locate and produce evidence
17 of consent as to 344,000 members of the Direct Liability Class who were not contacted from
18 Triangular leads. Hearing Help claims it would take the sole IT staff member several weeks or
19 months to locate and produce this evidence. (Calligan Decl. ¶ 11.) Hearing Help also argues that
20 the evidence relates to an uncertified class, so that consent evidence as to all 344,000 phone
21 numbers is not needed at this juncture.

22   Hearing Help raises a close issue of proportionality. The information Plaintiff seeks is
23 relevant to class certification, as discussed above, and to Hearing Help's class-wide consent
24

1  defense. This appears to be a substantial issue in this case both as to class certification, and, if
2  certification occurs, as to a class-wide defense. And consent appears central to Hearing Help's
3  business operations, suggesting that proof of such ought to be readily accessible to show
4  compliance with the TCPA. But against this backdrop, the Court acknowledges that Hearing
5  Help has provided an uncontested declaration attesting to the burden it faces in responding to this
6  request. (See Calligan Decl.) While the Court cannot second-guess this claim of burden, the
7  declarant admits he has not reviewed the contracts with all eleven vendors or assessed exactly
8  how many pages or documents he will need to review to satisfy this RFP. (See id. ¶ 11.) And
9  Hearing Help has not identified whether there are third-party automation tools not currently in
10 use that could speed the process up. (See id. (stating "to my knowledge, there is no way to
11 automate this process using the tools available to me").)
12         Given the mixed record before the Court, it appears that a middle ground is proper to
13 both satisfy Plaintiff's valid request and alleviate some burden on Hearing Help. The Court
14 therefore ORDERS the Parties to meet and confer to discuss and develop an agreed-upon
15 sampling methodology to create a statistically valid sample of the 344,000 calls in the proposed
16 Direct-Liability Class that is representative of all eleven third-party vendors. The Parties shall
17 share in the cost of retaining any expert if one is needed create an agreed-upon sample. The
18 sample must be created within 21 days of entry of this Order. And Hearing Help must then
19 provide all documents responsive to RFP 39 as to the calls within the sample 14 days after the
20 sample is created. The Court sets these timelines so that this information is available to the
21 Parties in advance of the February 25, 2021 class certification deadline. At class certification, the
22 Parties shall be limited to the discussing the calls within this sample as to the issue of class-wide
23 consent. If the Court certifies a Direct-Liability Class, it will then order production of documents
24

responsive to RFP 39 as to all persons within that class. On this basis the Court GRANTS in part and DENIES in Part Hearing Help's Motion.

### 4. The Subpoena is Proper

As limited by Plaintiff, the subpoena to ByteSuccess is appropriate because it seeks information relevant to class-wide consent as to 6,000 unique phone number leads that ByteSuccess sold to Hearing Help. There is no evidence of burden or any statement from ByteSuccess to this effect. And the production of this information may well lesson the burden on Hearing Help to respond to RFP 39. The Court DENIES the Motion as to this subpoena.

## B. Motion to Strike

### 1. Legal Standard

Rule 12(f) grants the Court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted). The moving party bears the burden of showing that a challenged defense is insufficient. See LaFleur v. Sunbeam Prods., Inc., Case No. C09-425MJP, Dkt. No. 36 at 4 (W.D. Wash. 2010).

### 2. The Affirmative Defense Is Improper

To prove a claim under the TCPA, a plaintiff must show that (1) the defendant called a cellular telephone number, (2) using an automatic telephone dialing system, (3) without the recipient's prior consent. 47 U.S.C. § 227(b)(1). The TCPA provides for treble damages if defendant acted willfully or knowingly. 47 U.S.C. § 227(b)(3).

1    There is no good-faith defense to liability written in the TCPA itself, and the Ninth
2    Circuit has not ruled on this issue or determined whether the TCPA is a strict liability statute. But
3    the Seventh, Eighth, and Eleventh Circuits have all held that intent only concerns trebling
4    damages, not determining liability. Alea London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768,
5    776 (11th Cir. 2011); Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 641 (7th Cir.
6    2012); Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 882 n. 3 (8th Cir.
7    2005).
8    The Ninth Circuit has recently touched on a related issue under the TCPA, which
9    strongly suggests the affirmative defense is invalid. See N.L. by Lemos v. Credit One Bank,
10   N.A., 900 F.3d 1164, 1166 (9th Cir. 2020). In Lemos, the Court held that the defendant's "intent
11   to call a customer who had consented to its calls does not exempt [defendant] from liability
12   under the TCPA when it calls someone else who did not consent." Id. at 1167. The Court reached
13   this conclusion because the TCPA contains no language to the effect that a violation inures only
14   if the person called was the "intended recipient." Id. And the Court found it further illogical to
15   read such a provision into the statute. It noted that the legislative purpose in passing the TCPA
16   was to ban "automated or prerecorded telephone calls to the home, except when the receiving
17   party consents to receiving the call . . . , is the only effective means of protecting telephone
18   consumers from this nuisance and privacy invasion." Id. at 1170 (quoting Pub. L. No. 102-243, §
19   2(12), 105 Stat. at 2394 (emphasis added)).
20   Hearing Help does not address or attempt to distinguish Lemos. Instead, it cites to a
21   handful of district court cases in the Ninth Circuit that predate Lemos and which permitted the
22   defense. (Def. Opp to Mot. at 6-7 (Dkt. No. 92 at 10-11) (citing Springer v. Fair Isaac Corp., No.
23   14-cv-2238-TLN-AC, 2015 U.S. Dist. LEXIS 154765 (E.D. Cal. Nov. 13, 2015); Danehy v.
24

Time Warner Cable Enters., 5:14-CV-133-FL, 2015 U.S. Dist. LEXIS 125325 (E.D.N.C. Aug. 6, 2015); Degnen v. Dentis USA Corp., 2017 U.S. Dist. LEXIS 72491 (E.D. Mo. May 12, 2017).) None of the pre-Lemos decisions offers any persuasive reasoning to allow this defense, particularly since none of them grapples with the text of and legislative intent behind the TCPA.

Having considered the cases cited by the Parties the Court GRANTS Plaintiff's Motion and STRIKES Hearing Help's Fourteenth Affirmative Defense. The Court notes that intent and good faith reliance remain issues in this case, but only as to treble damages.

### 3. Motion is Procedurally Proper

Hearing Help argues that Plaintiff's motion is procedurally improper because: (1) it is untimely and (2) the affirmative defense meets Rule 8. (Def. Opp. to Mot. at 5-6, 9.) Neither argument has merit. First, the motion is timely made. Plaintiff filed his motion on October 9th, two weeks after Hearing Help filed its Answer to the Second Amended Complaint. This is timely under Rule 12(f). Second, it is ultimately irrelevant whether Hearing Help's defense was pleaded with enough specificity to satisfy Rule 8's notice pleading rule. The fact remains that it is a legally untenable defense.

### CONCLUSION

The Court GRANTS in part and DENIES in part Hearing Help's Motion for Protective Order. The Court will not quash the subpoena issued to ByteSuccess, which seeks relevant material. And to alleviate concerns raised by Hearing Help as to the burden in responding to Plaintiff's RFP 39, the Court ORDERS the Parties to create an agreed-upon sample of the calls in the proposed Direct Liability on the terms and timeline outlined above.

1     The Court GRANTS Plaintiff's Motion to Strike the Fourteenth Affirmative Defense. A good faith and reasonable reliance defense is not available in this matter, though issues of intent are relevant to the issue of treble damages.

    The clerk is ordered to provide copies of this order to all counsel.

Dated December 22, 2020.

                                                Marsha J. Pechman
                                              United States District Judge